UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENISE DENOVA,

      Plaintiff,

v.

                                 CASE NO. 8:17-cv-2204-SDM-AAS

OCWEN LOAN SERVICING, LLC,

      Defendant.

_____

## OCWEN'S OPPOSITION TO PLAINTIFF DENISE DENOVA'S MOTION FOR SUMMARY JUDGMENT

## **Table of Contents**

Introduction ................................................................................................................. 1

Response to Ms. Denova's Statement of Material Facts ........................................... 1

The Standard on Summary Judgment ........................................................................ 7

Argument and Authorities ......................................................................................... 8

    **I.**    Ocwen did not place calls in violation of the TCPA because the Aspect ALM and UIP software used by Ocwen do not satisfy the post-ACA definition of an ATDS as a matter of law, therefore Ms. Denova's Motion for Summary Judgment should be denied. .................................... 8

        A.    ACA Int'l v. FCC overturned all prior FCC rulings that expanded the definition of an ATDS to include predictive dialers .................................. 8

        B.    Neither ALM nor UIP has the capacity to generate random or sequential numbers and UIP is not capable of storing numbers to be dialed. ....................................................................................................... 10

        C.    Ms. Denova does not have standing to bring a claim under the TCPA for the allegedly received prerecorded or artificial voice calls because she did not suffer any injury fairly traceable to the violation claimed............................................................................................ 14

        D.    Ms. Denova is not entitled to trebled damages because any unlawful conduct was not willful and knowing and an award of such damages would be excessive in violation of the Fifth and Fourteenth Amendments ................................................................................. 17

    **II.**    Ocwen did not violate the FDCPA or FCCPA because it did not harass Ms. Denova or communicate with her after it knew she was represented by an attorney. ................................................................................ 20

        A.    Other than her own unsupported, self-serving statements, Ms. Denova cannot point to any conduct that constitutes harassment under the FDCPA or FCCPA.......................................................................... 21

        B.    Ocwen did not know that Ms. Denova was represented by an attorney at the time it placed calls to her. ........................................................ 23

Conclusion.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

**Page(s)**

ACA International v. Fed. Comms. Comm'n,
   885 F.3d 687 (D.C. Cir. 2018) ................................................................................*passim*

Adams v. Ocwen Loan Servicing LLC,
   2018 U.S. Dist. LEXIS 184513 ................................................................................. 10

Ammons v. Ally Financial, Inc.,
   326 F. Supp. 3d 578 ................................................................................................. 10

Blanco v. Specialty Painting, Inc.,
   No. 6:07-cv-828-Orl-22DAB, 2008 WL 4371341 (M.D. Fla. Sept. 22, 2008) .............................. 7

Bruesewitz v. Wyeth LLC,
   562 U.S. 223 (2011) ................................................................................................. 12

Carbonell v. Frederick J Hannah & Associates, P.C.,
   1:14-CV-21689-UU, 2014 WL 12580524 (S.D. Fla. Aug. 1, 2014) ............................................ 23

Cavanaugh v. HSBC Card Services, Inc.,
   No. 3:10-cv-356-HES-TEM, 2010 WL 3746260 (M.D. Fla. Sep. 22, 2010) ................................. 23

Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A. et al.,
   511 U.S. 164 (1994) ................................................................................................. 12

Denova v. Ocwen Loan Servicing, LLC,
   No. 8:17-cv-02204-23AAS, 2018 U.S. Dist. LEXIS 6695 ................................................... 21, 24

Dominguez v. Yahoo, Inc,
   894 F.3d 116 (3d Cir. 2018) ................................................................................ 10, 11, 13

Fitzpatrick v. City of Atlanta
   2 F.3d 1112 (11th Cir. 1993) ...................................................................................... 7

France v. Ditech Fin., LLC,
   8:17-cv-3038-T24-MAP, 2018 WL 1695405 (M.D. Fla. Apr. 6, 2018) ....................................... 24

Gary v. TrueBlue, Inc.,
   No. 17-cv-10544, 2018 WL 3647046 (E.D. Mich. Aug. 1, 2018) ............................................ 9

Glasser v. Hilton Grand Vacations Co., LLC,
   8:16-cv-952-JDW-AAS, 2018 WL 4565751 (M.D. Fla. Sep. 24, 2018) ......................... 10, 11, 13

Gonzalez v. Ocwen Loan Servicing, LLC,
No. 5:18-cv-340-Oc-30PRL, 2018 WL 4217065 (M.D. Fla. Sept. 5, 2018) ...................... 9, 11, 13

Grimsley v. Palm Beach Credit Adjusters, Inc.,
691 F. App'x 576 (11th Cir. 2017) ................................................................................ 21

Gutierrez-Rodriguez v. R.M. Galicia, Inc.,
No. 16-cv-0182-H-BLM, 2017 U.S. Dist. LEXIS 170982 (S.D. Cal. Oct. 16,
2017) ........................................................................................................................ 5

Harrington v. RoundPoint Mortgage Servicing Corporation,
290 F. Supp. 3d 1306 (M.D. Fla. Nov. 30, 2017) ........................................................ 22

Herrick v. GoDaddy.com LLC,
No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018)................... 9

King v. Time Warner Cable Inc.,
894 F. 3d 473 (2d Cir. 2018).................................................................................. 11, 13

Kloha v. Duda,
246 F. Supp. 2d 1237 (M.D. Fla. Feb. 14, 2003) ........................................................ 18

Maddox v. CBE Grp., Inc.,
2018 WL 2327037 (N.D. Ga. May 22, 2018) ............................................................. 10

Marshall v. CBE Grp., Inc.,
No. 2:16-cv-02406-GMN-NJK, 2018 WL 1567852 (D. Nev. Mar. 30, 2018) .............. 9

Maryland v. Universal Elections, Inc.,
862 F. Supp. 2d 457 (D. Md. 2012) .......................................................................... 20

Mey v. Got Warranty, Inc.,
193 F. Supp. 3d 641 (N.D. W.V. Jun. 30, 2016)......................................................... 15

Ortega v. Collectors Training Inst. Of Illinois, Inc.,
No. 09-21744-CIV-GOLD/MCALILEY, 2010 U.S. Dist. LEXIS 150657 (S.D.
Fla. Mar. 31, 2010) ................................................................................................ 21

Perry v. Cable News Network, Inc.,
854 F.3d 1336 (11th Cir. Apr. 27, 2017) .................................................................. 15

Pinkus v. Sirius XM Radio, Inc.,
No. 16 C 10858, 2018 WL 3586186 (N.D. Ill. Jul. 26, 2018) ...................................... 9

Pugliese v. Prof'l Recovery Serv.,
No. 09-12262, 2010 WL 2632562 (E.D. Mich. Jun. 29, 2019) ................................... 22

Ramos v. Hopele of Ft. Lauderdale, LLC,
2018 U.S. Dist. LEXIS 139947 (S.D. Fla. Aug. 16, 2018).......................................... 10

iv

*Reyes v. BCA Fin Servs., Inc.*
2018 WL 2220417 (S.D. Fla. May 14, 2018) ................................................................ 8

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,*
7 F.C.C. Rcd. 8752 (1992) ..................................................................................... 12, 16

*Sessions v. Barclays Bank Delaware,*
No. 1:17-cv-01600-LMM, 2018 WL 3134439 (N.D. Ga. Jun. 25, 2018) ..................... 9

*Snyder et al v. Ocwen Loan Servicing,*
1:14-cv-08461, Dkt. No. 33-4 (N.D. Ill.) ................................................................... 5

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016) ............................................................................................... 15

*Story v. Fields,*
343 So. 2d 675 (Fla. 1st DCA 1977) ......................................................................... 21

*Swaney v. Regions Bank,*
2018 WL 2316452 (N.D. Ala. May 22, 2018) ............................................................ 10

*Tillman v. Ally Fin., Inc.,*
No. 2:16-cv-313-FtM-99CM, 2017 U.S. Dist. LEXIS 71919 (M.D. Fla. May 11, 2017) .......................................................................................................................... 15

*Tucker v. CBE Group, Inc.,*
710 F. Supp. 2d 1301 (M.D. Fla. 2010) .................................................................... 22

*United States v. Davis,*
809 F. 2d 1509 (11th Cir. 1987) ...................................................................... 7, 18, 22

*United States v. Dish Network, LLC,*
256 F. Supp. 3d 810 (C.D. Ill. Jun. 5, 2017) ............................................................ 20

*VMG Salsoul, LLC v. Ciccone,*
824 F.3d 871 (9th Cir. 2016) ..................................................................................... 12

*Wolhuter v. Carrington Mortgage Services, LLC,*
8:15-cv-552-MSS-TBM, 2015 WL 12819153 (M.D. Fla. Oct. 28, 2015) ............ 3, 23, 24

*Wright v. Select Portfolio Servicing, Inc.,*
8:14-CV-2298-T-30TGW, 2015 WL 419618 (M.D. Fla. Feb. 2, 2015) ...................... 23

**Statutes**

15 U.S.C. § 1692(a)(6) ................................................................................................. 1

15 U.S.C. § 1692d ...................................................................................................... 21

15 U.S.C. §1692k(d)) ........................................................................................................ 22

47 U.S.C. § 227(a)(1)(A) ................................................................................................... 10

Fla. Stat. 559.77(4) ........................................................................................................... 22

**Introduction**

Ms. Denova's Motion for Summary Judgment should be denied and summary judgment should be granted in favor of Ocwen because: (1) Ocwen's Aspect software used to place the calls to Ms. Denova is not an automatic telephone dialing system ("ATDS") under the TCPA, (2) Ms. Denova does not have Article III standing to bring a claim for any prerecorded voice messages that she received from Ocwen because she has not alleged any injury fairly traceable to those voice messages; (3) the facts contradict her claim that Ocwen engaged in harassing conduct under the Fair Debt Collection Practices Act or the Florida Consumer Collection Practices Act; and (4) the facts contradict her claim that Ocwen communicated with her with knowledge that she was represented by an attorney in violation of the FDCPA and FCCPA.

**Response to Ms. Denova's Statement of Material Facts**

Ocwen responds to Ms. Denova's Statement of Material Facts in Support of Her Motion for Summary Judgment as follows:

**Paragraphs 1-3:** Undisputed.

**Paragraph 4:** Ocwen disputes the first sentence in paragraph 4 to the extent that it characterizes Ocwen as a debt collector. Ocwen is a mortgage servicer and only falls under the definition of a debt collector under the FDCPA in limited circumstances. 15 U.S.C. § 1692(a)(6); <u>See</u> Exhibit A, Deposition of Crystal Kearse ("Kearse Dep.") at 136:1-5. Ocwen does not dispute that it serviced Ms. Denova's mortgage loan on behalf of the Bank of New York Mellon or that Ms. Denova's mortgage loan was in default two years before Ocwen obtained servicing rights.

1

**Paragraph 5:** Ocwen does not dispute that Ms. Denova never provided her phone number to Ocwen.  However, Ms. Denova did include her number on her Uniform Residential Loan Application submitted as part of her loan application packet on June 24, 2003.  See Exhibit B, Declaration of Katherine Ortwerth in Support of Ocwen's Opposition to Plaintiff's Motion for Summary Judgment ("Ortwerth Dec.") at Exh. 1, Uniform Residential Loan Application.

**Paragraph 6:** Ocwen does not dispute that Ms. Denova sent a letter to Litton Loan Servicing, the prior servicer of her loan, dated November 2, 2009, questioning Litton's right to service the debt.  In that letter, Ms. Denova claimed not to know who Litton was and disputed that she had a relationship with Litton because Litton did not own her debt.  Ocwen disputes that the November 2, 2009 letter to Litton constitutes effective revocation as to Ocwen under the TCPA, FDCPA, or FCCPA, because in it Ms. Denova specifically permits communications "to advise . . . that you or the creditor are taking specific actions allowed by the FDCPA or my state laws."  Denova's Material Facts at Exhibit G.

**Paragraph 7:** Ocwen does not dispute that it obtained Ms. Denova's cell phone number on April 15, 2013 by skip-tracing, and does not dispute that it later called Ms. Denova on that number using Aspect Unified IP ("UIP").  However, Ms. Denova previously provided her cell phone number in connection with the debt when she included it on her Uniform Residential Loan Application dated June 24, 2003.  Ortwerth Dec. at Exh. 1.

**Paragraphs 8:** Ocwen does not dispute that between April 15, 2013 and February 1, 2017, Ms. Denova's home was in foreclosure.  Ocwen does not dispute that Ms. Denova was represented by an attorney with respect to that action, but disputes Ms. Denova's legal

2

conclusion that any notice of appearance filed by her attorney in that action was sufficient to impute knowledge of such representation onto Ocwen. Wolhuter v. Carrington Mortgage Services, LLC, 8:15-cv-552-MSS-TBM, 2015 WL 12819153, at *5 (M.D. Fla. Oct. 28, 2015).

**Paragraph 9:** Ocwen does not dispute that as servicer of Plaintiff's loan Ocwen assisted foreclosure counsel in executing documents, providing affidavits to foreclosure counsel, and providing documents to foreclosure counsel so that they could foreclose on the property on behalf of Bank of New York Mellon. Kearse Dep. at 134:10-20. Ocwen disputes that it was provided with actual notice that Ms. Denova was represented by counsel. Kearse Dep. at 134:21-24 ("Q: Okay. Did counsel in the foreclosure case ever notify Ocwen that Ms. Denova was represented by counsel in the foreclosure action? A: I did not see any reference to that.") Ocwen further disputes that any notice of appearance filed by Ms. Denova's attorneys in that foreclosure action was sufficient to impute knowledge of such representation onto Ocwen. Wolhuter 2015 WL 12819153, at *5.

**Paragraph 10:** Paragraph 10 fails to state a material fact for purposes of summary judgment and should be disregarded, as Ms. Denova's prior illness and litigation with her insurance company have no bearing on whether calls were placed to her using an ATDS, whether those calls were harassing, or whether Ocwen knew at the time it placed calls that Ms. Denova was represented by an attorney. Ocwen does not dispute that Ms. Denova defaulted on her mortgage, but such default occurred a year before Ms. Denova experienced any financial hardship related to the sinkhole damage and the litigation with her insurance company. See Exhibit C, Deposition of Denise Denova ("Denova Dep.") at 34:24-35:2.

**Paragraph 11:**  Ocwen does not dispute that it called Ms. Denova on the occasions stated.  However, with the exception of one call on April 19, 2013, Ms. Denova never answered a single call from Ocwen.  Ortwerth Dec. at ¶ 16.

**Paragraph 12:**  Ocwen disputes that Ms. Denova spoke with an Ocwen representative on 8 to 10 occasions.  Ortwerth Dec. at ¶ 16.  Ocwen disputes that she notified Ocwen in 2012 that she was represented by an attorney because no calls connected with her phone until April 15, 2013.  Kearse Dep. at 44:24-45:4; Ortwerth Dec. at ¶ 19, Exh. 2, Call Log; Denova Material Facts at ¶3.  Further, Ms. Denova did not speak with an Ocwen representative in November 2013.  Ortwerth Dec. at ¶ 20.  Ocwen's records show only 6 calls during November 2013, five of which resulted in a voicemail, and one which was disconnected before reaching Ms. Denova.  Ortwerth Dec. at ¶ 20, Exh. 2 at Ocwen (Denova) Document Production – 0073, and Exh. 3, Comment Log.  Ms. Denova's own cell phone records for the month of November 2013 show no calls to her cellular telephone number. See Exhibit D, Ms. Denova's November 2013 Cell Phone Records.

Ocwen's records further show that Ms. Denova did not speak with an Ocwen representative at any point in 2015.  Ortwerth Dec. at ¶ 16.  In fact, as reflected in Ocwen's records, Ms. Denova only spoke to an Ocwen representative on one single occasion on April 19, 2013.  During that conversation, Ms. Denova claimed not to know who Ocwen was. Ortwerth Dec. at Exh. 4, Transcript of Call Recording**.**  She did not ask Ocwen to stop calling and she did not inform Ocwen that she was represented by attorney.  Id.

**Paragraph 13:**  Undisputed.

**Paragraph 14:**  Undisputed.

**Paragraphs 15:** Ocwen disputes the characterization of Ocwen's Aspect software as an "autodialer" or an ATDS as that term is defined by the TCPA.[1]  This is a statement of law and is the ultimate question of law for the Court to decide.  Gutierrez-Rodriguez v. R.M. Galicia, Inc., No. 16-cv-0182-H-BLM, 2017 U.S. Dist. LEXIS 170982, at *11 (S.D. Cal. Oct. 16, 2017) ("Importantly, whether Defendant used an ATDS or an artificial or pre-recorded voice system to call cellular phones in violation of the TCPA involves a common question of law.")



See Exhibit E,

Ocwen does not dispute that the phone numbers to be dialed are provided to ALM from an Ocwen employee based on information maintained in Ocwen's proprietary servicing platform, RealServicing.  Kearse Dep. at 71:11-19 and 112:11-13.

See Exhibit F,

---

[1] In support of her position that Ocwen's system is an "autodialer," Ms. Denova cites to the Affidavit of Sherri Goodman filed in Snyder et al v. Ocwen Loan Servicing, 1:14-cv-08461, Dkt. No. 33-4 (N.D. Ill.) wherein Ms. Goodman referred to Ocwen's system as an "autodialer."  Denova's Material Facts at ¶ 15; Motion at 6.  Ms. Goodman's characterization of Ocwen's dialing system as an "autodialer" was based on the applicable law at the time of that statement under which all predictive dialers were an ATDS.  The DC Circuit subsequently vacated that law when it vacated the FCC's 2003, 2008, and 2015 Orders in ACA International v. Fed. Comms. Comm'n, 885 F.3d 687, 701 (D.C. Cir. 2018).

 Ocwen does not dispute that this technology allows Ocwen to place more phone calls than would be possible with agents dialing the numbers manually.

Ocwen disputes that an Ocwen employee is not involved until a phone call is delivered to an employee.  Human involvement is required to (1) determine the type of borrowers (e.g., 30 days late) to be called in a given call campaign, (2) request the borrower information from RealServicing for borrowers who will be part of the campaign; (3) inspect the data received from RealServicing; (4) upload the borrower data from RealServicing into ALM; (5) program ALM with the rules and parameters for calling borrowers; and (6) prepare UIP to begin placing calls for the day and monitor the timing and the speed of the calls made in real time.  Kearse Dep. at 71:11-19, 112:11-13,

**Paragraph 16:**  Ocwen disputes Mr. Snyder's characterization of Aspect.  Ms. Denova's expert agrees that neither ALM nor UIP can generate numbers.  Deposition of Ms. Denova's Expert, Randall Snyder ("Snyder Dep.") at 95:13-16, 114:16-21;

Rather, phone numbers are obtained from Ocwen's system of record known as RealServicing based on parameters for a call campaign determined by Ocwen business units.  Kearse Dep. at 71:11-19; 112:11-13.



see also Snyder Dep. at 98:17-25.

Ocwen does not use UIP to store numbers.  Snyder Dep. at 126:11-127:9.  ALM does store numbers, but as Ms. Denova admits, the list is generated in "*prescribed* sequence and frequency" —  not randomly. Denova's Material Facts at ¶15, Snyder Dep. at 97:11-98:20.

### The Standard on Summary Judgment

Summary judgment is only appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Summary judgment cannot be granted where the moving party fails to present sufficient evidence to support an essential element of his case.  Fitzpatrick v. City of Atlanta 2 F.3d 1112, 1115 (11th Cir. 1993).  "Affidavits in support or opposition to a motion for summary judgment must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Blanco v. Specialty Painting, Inc., No. 6:07-cv-828-Orl-22DAB, 2008 WL 4371341, at *2 (M.D. Fla. Sept. 22, 2008).  Where there exists "overwhelming direct evidence to contradict" deposition testimony or the testimony is "so internally inconsistent," the court may discount that deposition testimony in a motion for summary judgment.  United States v. Davis, 809 F. 2d

1509, 1513 (11th Cir. 1987).

**Argument and Authorities**

I.     **Ocwen did not place calls in violation of the TCPA because the Aspect ALM and UIP software used by Ocwen do not satisfy the post-ACA definition of an ATDS as a matter of law, therefore Ms. Denova's Motion for Summary Judgment should be denied.**

     A.     <u>ACA Int'l v. FCC overturned all prior FCC rulings that expanded the definition of an ATDS to include predictive dialers</u>

Ms. Denova argues that "[t]he Aspect telephone dialing system used by Ocwen is an autodialer that has predictive dialer capabilities" and then concludes that Aspect is therefore an ATDS under the TCPA.  Motion at p. 6.  This argument is based on the false premise that as a matter of law a predictive dialer is an ATDS.  The FCC held just that in its 2003, 2008 and 2015 Orders, but all these Orders were vacated by the D.C. Circuit in <u>ACA International v. Fed. Comms. Comm'n</u>, 885 F.3d 687, 701 (D.C. Cir. 2018).

Ms. Denova disputes that interpretation of ACA, arguing that the decision vacated only the FCC's 2015 Order, leaving standing the 2003 and 2008 Orders.  But her argument is mistaken.  It rests on <u>Reyes v. BCA Fin Servs., Inc.</u> 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018), where the court held on a summary judgment motion that the 2003 and 2008 interpretations could not have been vacated by <u>ACA</u> because "the time to appeal those orders had long passed."  But the D.C. Circuit expressly addressed that argument, and rejected it, holding that it did have jurisdiction to consider the 2003 and 2008 Orders.  <u>See</u> <u>ACA</u>, 885 F.3d at 701 ("According to the [FCC], because there was no timely appeal from those previous orders, it is too late now to raise a challenge by seeking review of a more recent declaratory ruling that essentially ratifies the previous ones.  We disagree.").  <u>Many</u> courts

have rejected the very argument that Ms. Denova makes about the reach of ACA.  See, e.g., Gary v. TrueBlue, Inc., No. 17-cv-10544, 2018 WL 3647046, at * 6 (E.D. Mich. Aug. 1, 2018) (holding that "the FCC's rulings – including the ATDS definition which covered equipment that can only dial numbers from a set list – are no longer valid."); Pinkus v. Sirius XM Radio, Inc., No. 16 C 10858, 2018 WL 3586186, at *6 (N.D. Ill. Jul. 26, 2018) ("it necessarily follows that [ACA] invalidates not only the 2015 Declaratory Ruling's understanding that all predictive dialers qualify as ATDSs, but also the 2003 Order and 2008 Declaratory Ruling to the extent they express the same understanding"); Sessions v. Barclays Bank Delaware, No. 1:17-cv-01600-LMM, 2018 WL 3134439, at * 4 (N.D. Ga. Jun. 25, 2018) (holding that because the 2003 and 2008 FCC Orders "had said the same" as the 2015 FCC Order regarding the interpretation of an ATDS, by vacating the 2015 interpretation, the D.C. Circuit also vacated the 2003 and 2008 interpretations); Herrick v. GoDaddy.com LLC, No. CV-16-00254-PHX-DJH, 2018 WL 2229131 (D. Ariz. May 14, 2018) ("[T]he [ACA] court 'set aside' the FCC's interpretations of 'using a random or sequential number generator.'"); Marshall v. CBE Grp., Inc., No. 2:16-cv-02406-GMN-NJK, 2018 WL 1567852, at *4-5 (D. Nev. Mar. 30, 2018) (holding that ACA set aside the FCC's interpretation of an ATDS).  And Judge Moody recently confirmed that the ACA decision did, in fact, overturn the pre-2015 FCC Orders.  Gonzalez v. Ocwen Loan Servicing, LLC, No. 5:18-cv-340-Oc-30PRL, 2018 WL 4217065, at * 5 (M.D. Fla. Sept. 5, 2018) (J. Moody).

In fact, even the two cases that Ms. Denova relies on to support her conclusion that a predictive dialer is an ATDS under the statute agree that the 2003 and 2008 Orders were vacated by ACA.  In Marks v. Crunch San Diego, LLC, the Court held that "the D.C. Circuit

vacated the FCC's interpretation of what sort of device qualified as an ATDS" and as a result "only the statutory definition of ATDS as set forth by Congress in 1991 remains." 904 F.3d 1041, 1049 (9th Cir. Sep. 20, 2018).  See also, Adams v. Ocwen Loan Servicing LLC, 2018 U.S. Dist. LEXIS 184513, at \*7 (agreeing with Ocwen that ACA vacated "the FCC's 2003 and 2008 Orders' interpretation of the statutory meaning of an ATDS"). [2]

      B.      <u>Neither ALM nor UIP has the capacity to generate random or sequential numbers and UIP is not capable of storing numbers to be dialed.</u>

The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator."  47 U.S.C. § 227(a)(1)(A).  Post-<u>ACA</u> courts have interpreted the statutory text of the statute to mean that a system must be capable of *generating* numbers randomly or sequentially and then dialing those numbers or the technology must be capable of automatically storing numbers and then dialing them.

_____

    [2] The other cases that Ms. Denova cites for the holding that <u>ACA</u> had no effect on the 2003 and 2008 interpretations all either rely on <u>Reyes's</u> erroneous conclusion or provide no rationale at all; <u>Swaney v. Regions Bank</u>, 2018 WL 2316452, at \*1 (N.D. Ala. May 22, 2018), and <u>Maddox v. CBE Grp., Inc.</u>, 2018 WL 2327037, at \*4 (N.D. Ga. May 22, 2018), provided no analysis and cited no authority for that conclusion; <u>Ramos v. Hopele of Ft. Lauderdale, LLC</u>, 2018 U.S. Dist. LEXIS 139947 (S.D. Fla. Aug. 16, 2018), relied on <u>Reyes</u>. <u>Ammons v. Ally Financial, Inc.</u>, 326 F. Supp. 3d 578; 587 (M.D. Tenn. Jun. 27, 2018), agreed with <u>Reyes</u> and the cases relying on <u>Reyes</u> to hold that the 2003 and 2008 Orders were not overturned.  In <u>Glasser v. Hilton Grand Vacations Co., LLC</u>, 8:16-cv-952-JDW-AAS, 2018 WL 4565751 (M.D. Fla. Sep. 24, 2018), the Court cites only to <u>Dominguez v. Yahoo, Inc</u>, 894 F.3d 116, 119 (3d Cir. 2018) to support its position that the pre-2015 Orders are still good law post-<u>ACA</u>.  However, the <u>Dominguez</u> court did not consider the impact that <u>ACA</u> had on the prior orders.  Rather, the only consideration in <u>Dominguez</u> was whether, post <u>ACA,</u> to be an ATDS a system must have the present capacity to function as an autodialer.  Only the 2015 Order expanded the definition of capacity to include future capacity.  Therefore, the only FCC Order at issue in that case was the 2015 Order, not the 2003 or 2008 Orders.  Therefore, <u>Glasser</u>'s reliance on <u>Dominguez</u> to support its position that the 2003 and 2008 Orders are still valid is misplaced.

The Second and Third Circuits[3] and two courts in the Middle District of Florida have held that to be an ATDS, the system must be able to *generate* numbers randomly or sequentially and then dial those numbers.  See Dominguez v. Yahoo, Inc., 894 F. 3d 116, 121 (3d Cir. 2018) (granting summary judgment in favor of Yahoo because plaintiff had provided no evidence that the defendant's dialer "had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers"); King v. Time Warner Cable Inc., 894 F. 3d 473, 479 (2d Cir. 2018) (holding that only a device that "currently has features that enable it to perform the functions of an autodialer" (i.e., generate and dial random or sequential numbers) is an ATDS); Gonzalez, 2018 WL 4217065, at *6 ("the definition of an ATDS would not include a predictive dialer that lacks the present capacity to generate random or sequential telephone numbers and dial them")  (emphasis in original)[4]; Glasser, 2018 WL 4565751, at *4 (device was not an ATDS because "[n]othing in the record demonstrates that Defendant's IMC System generated numbers and then called them").

---

[3] Ms. Denova incorrectly argues that only two circuits have considered the question of what capabilities a system must have post-ACA in order to constitute an ATDS under the TCPA.  In fact, three circuit courts have weighed in on the issue; two of those three circuits have determined that to qualify as an ATDS, the equipment must have the present capacity to both generate numbers and dial them.

[4] Plaintiff asks this Court to disregard Gonzalez, arguing that Judge Moody lacked "the benefit" of the Ninth Circuit's Marks decision when issuing his opinion Plaintiff fails to acknowledge that two other circuits had already weighed in on the question of what constitutes an ATDS and both of those circuits require that the system be capable of random or sequential number generation.

Although, the Ninth Circuit recently held that it is enough that a dialer be able to store numbers and then call them in order to constitute an ATDS, <u>Marks</u> incorrectly applied the TCPA.  <u>Marks</u>, 904 F. 3d at 1053.

First, <u>Marks</u> interpreted the TCPA without regard to its legislative history, which shows that to be an ATDS a device must be able to generate random or sequential numbers. In its 1992 Order, the FCC clearly understood this to be the intent of the statute.  <u>See</u> <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, 7 F.C.C. Rcd. 8752, 8773 (1992) ("autodialer calls" were "dialed using a random or sequential number generator"), 8776 (stating the prohibitions of § 227(b)(1) <u>do not apply</u> to functions like "speed dialing" and "call forwarding," because numbers are "not generated in a random or sequential fashion").

Second, the Court's interpretation of the TCPA in <u>Marks</u> relied heavily on the fact that Congress did not act to overturn the FCC's 2003 and later Orders making predictive dialers which do not generate random or sequential numbers into an ATDS.  But the Supreme Court has long held that "[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction," and Ninth Circuit authority is in accord.  <u>Central Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A. et al.</u>, 511 U.S. 164, 187 (1994); <u>Bruesewitz v. Wyeth LLC</u>, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation."); <u>VMG Salsoul, LLC v. Ciccone</u>, 824 F.3d 871, 886–87 (9th Cir. 2016) ("[C]ongressional inaction in the face of a judicial statutory interpretation . . . carries almost no weight.").

Finally, <u>Marks</u> creates the very same "overbreadth" problem which was a concern for the D.C. Circuit in <u>ACA</u>.  Under the Ninth Circuit's holding, any smartphone could be an ATDS because smartphones have the capacity to store numbers and dial those numbers by tapping on a party's name in the contacts list, without having to manually dial or press a 10-digit number, or program phones to send scheduled messages or auto-replies.

This Court should follow the Second and Third Circuits, as well as Judge Moody and Judge Whittemore, and find that an ATDS must be able to generate random and sequential numbers and then dial them.  None of the Courts interpreting an ATDS to be a system capable of generating random or sequential numbers have concluded that "resequencing" a pre-existing list of numbers is sufficient to constitute a "random or sequential number generator" under the statute.  <u>See</u> <u>Dominguez</u>, 894 F. 3d at 121; <u>King</u>, 894 F. 3d at 479; <u>Gonzalez</u>, 2018 WL 4217065, at *6; <u>Glasser</u>, 2018 WL 4565751, at *4.  Rather, courts have focused on the ability to generate *phone numbers*.  <u>Id.</u>  As such, Plaintiff's "resequencing" conclusion is erroneous because Plaintiff's own expert concedes that neither ALM nor UIP is capable of random or sequential number generation, and therefore does not meet the definition of an ATDS.  Snyder Dep. at 95:13-16 and 114:16-21.

Further, even under the overbroad construction in <u>Marks</u>, Plaintiff has not met her burden of proving that either ALM or UIP store and dial phone numbers.  Instead, Plaintiff conflates two indisputably separate systems to manufacture the appearance of a system that could fall under the <u>Marks</u> definition of an ATDS.  ███████████████████

████████████████████████████████████████

██████████████████████████████████████████

13

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

Before UIP can dial numbers, an Ocwen employee must define parameters for a call campaign by identifying the type of borrowers it wants to call (such as all borrowers who are 30 days past due).  Kearse Dep. at 71:11-19 and 112:11-13; ██████████████  ██████████

████████████████████████████████████████████

███████████████████████████████████  ████

████████████████  ████████████████████████████

████████████████████████████████████████████

███████████████████  ████████████████████████

███████████████████████████████████████████

█████████████████████████  ██████████████████

██████████████████████Thus, Ms. Denova cannot show that Ocwen's UIP system – the only system that dials – both dials and stores to meet the definition of an ATDS under the Marks rationale.

     C.    <u>Ms. Denova does not have standing to bring a claim under the TCPA for the allegedly received prerecorded or artificial voice calls because she did not suffer any injury fairly traceable to the violation claimed.</u>

Ms. Denova does not have standing to bring a claim for violations of the TCPA for prerecorded messages left on her voicemail.

In order to have standing to sue, Ms. Denova must show that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Post-Spokeo courts have looked to "'both history and the judgment of Congress in determining whether an intangible harm is concrete.'" Tillman v. Ally Fin., Inc., No. 2:16-cv-313-FtM-99CM, 2017 U.S. Dist. LEXIS 71919, at * 13-14 (M.D. Fla. May 11, 2017) (quoting Perry v. Cable News Network, Inc., 854 F.3d 1336, 1340 (11th Cir. Apr. 27, 2017)). Thus, courts across the country have found that because "Congress repeatedly identified the intangible harm of invasion of privacy as one of its primary concerns when it enacted the TCPA," a mere violation of the TCPA is sufficient to confer standing. See e.g., Mey v. Got Warranty, Inc., 193 F. Supp. 3d 641, 646 (N.D. W.V. Jun. 30, 2016).

However, this is not the same for a pre-recorded voicemail message related to debt collection. In enacting the TCPA, Congress was concerned with the use of calls placed using an artificial voice or a prerecorded voice because these types of devices could place calls to a phone number and occupy the line even after the individual hung up the call. S. REP. 102-178. In deciding to regulate these types of calls, Congress found that "the disconnection problem is especially important and is one of the principal reasons why automated calls are more of a nuisance than calls placed by "live" persons. Automated calls often do not disconnect the line after the called party hangs up, thereby preventing the called party from being able to use his or her line to make outgoing calls." Id. at fn. 5. This prompted

15

concerns about safety as "testimony before the Committee and press accounts" gave multiple examples of people who tried to make an emergency call only to find that their lines were tied up with prerecorded voice calls.  Id.   Congress granted the Federal Communications Commission "the flexibility to design different rules for those types of automated or prerecorded calls that it finds are not considered a nuisance or invasion of privacy…"  P.L. 102-243.

Congress was not contemplating the types of prerecorded debt collection calls at issue here, as evident by the FCC's first rulemaking in 1992.  In the 1992 Order, the FCC found that there is little difference in nuisance value between live calls and calls placed using a prerecorded message or an artificial voice and that most consumers "would object to either form of solicitation."  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8758 (1992).  Yet the FCC went on to find that "prerecorded debt collection calls would be exempt from the prohibitions on such calls to residences" because they do "not adversely affect privacy rights."  Id. at 8773  It is illogical to hold that prerecorded debt collection calls placed to a residential landline are not an invasion of privacy, but the very same calls placed to a cellular telephone do constitute an invasion of privacy.[5]

---

[5] As set forth in Ocwen's Motion for Summary Judgment, Ocwen also contends that post-ACA the 1992 Order is the only remaining FCC guidance regarding the definition of an ATDS.  [Dkt. No. 43].  In the 1992 Order, the Court specifically held that debt collection "calls are not autodialer calls (i.e. dialed using a random or sequential number generator)."  Therefore, because all of the calls placed to Ms. Denova's cellular telephone were placed for the purpose of collecting Ms. Denova's past due mortgage payments, those calls should be exempt from the TCPA pursuant to the 1992 Order.

If there is no invasion of privacy as a result of these calls, then Ms. Denova cannot demonstrate a cognizable injury simply because she received a voicemail message.  This is consistent with Ms. Denova's own pleadings in which she alleges no injury as a result of these voicemail messages.

D.  Ms. Denova is not entitled to trebled damages because any unlawful conduct was not willful and knowing and an award of such damages would be excessive in violation of the Fifth and Fourteenth Amendments

Even if this Court were to find that Ocwen's conduct violated the TCPA, Ms. Denova is not entitled to treble damages because she has not met her burden of establishing that Ocwen's conduct was not willful and knowing.

Ms. Denova claims that she is entitled to treble damages because she revoked consent to be called by (1) sending a letter to the prior servicer, (2) because Ocwen skip-traced her phone numbers, (3) she notified Ocwen that she was represented by an attorney, and (4) she revoked consent on 8 to 10 occasions.  None of these claims have a basis in fact.

First, the letter that Ms. Denova sent to the prior servicer on November 2, 2009, is not a blanket revocation of her consent to be called.  Rather, Ms. Denova's revocation includes certain exceptions under which communication from Litton is permissible: "stop contacting me regarding this or any other matter *except* to advise me that . . .  you or the creditor are taking specific actions allowed by the FDCPA or my state laws."  Denova's Material Facts, Exh. G.  Plaintiff has not pled any facts to show that Ocwen's communications do not fall within the exceptions permitted by Ms. Denova in her November letter.  Therefore, on these facts, there is not sufficient evidence before the Court to find that Ms. Denova's letter to

Litton constitutes even revocation much less that such a letter somehow rendered Ocwen's conduct willful when it invited continued contact.

Second, the fact that Ocwen skip-traced Ms. Denova's phone number is irrelevant.  It is undisputed that Ms. Denova provided her phone number on her Uniform Residential Loan Application in 2003.  Thus, consent was properly given in 2003, and the fact that the phone number was later confirmed as her phone number in 2013 via skip trace has no bearing on willfulness.

Third, Ms. Denova's claims that she informed Ocwen she was represented by an attorney and revoked consent to be contacted on 8 to 10 occasions is wholly unsupported by the facts.  Although a court generally may consider deposition testimony and sworn affidavits offered to support a motion for summary judgment,[6] such testimony is not entitled to deference when it is internally inconsistent and there exists "overwhelming direct evidence to contradict" it.  United States v. Davis, 809 F. 2d 1509, 1513 (11th Cir. 1987).  So, for instance, in Kloha v. Duda, 246 F. Supp. 2d 1237, 1240 fn. 13 (M.D. Fla. Feb. 14, 2003), the court disregarded deposition testimony of plaintiff's sister where "the record establishes the opposite."

Ms. Denova's deposition testimony as to the extent of her communications with Ocwen is directly contradicted by the "overwhelming direct evidence." Ms. Denova concedes that Ocwen's business records are the best evidence of the communications (or lack thereof) she had with Ocwen.  In response to discovery requests asking Ms. Denova to identify each instance in which "Plaintiff informed Defendant to stop placing calls," Ms.

---

[6] Fed. R. Civ. P. 56(a).

Denova generically refers Ocwen to "Defendant's call log and account notes that it previously produced in this action."  <u>See</u> Exhibit G, Plaintiff's Responses to Interrogatory No. 13.  And, Ms. Denova testified that she believes Ocwen's business records to be accurate.  Denova Dep. at 110:14-17.

On the contrary, Ms. Denova thus concedes that Ocwen's records flatly contradict Ms. Denova's assertion that she spoke with Ocwen 8-10 times, Ocwen's records show that she answered only one call.  Ortwerth Dec. at ¶ 16.  Ms. Denova claims that she spoke with Ocwen in November 2013, but Ms. Denova's own call records for the month of November 2013 show no calls with Ocwen during that time period.  Exh. D.  While Ocwen's records reflect 6 calls to Ms. Denova's cellular telephone number in November of 2013, she answered none of them.  Ortwerth Dec., Exh. 2 at Ocwen (Denova) Document Production – 0073.  One call was disconnected before it reached Ms. Denova.  Ortwerth Dec. at ¶ 20, Exh. 3.  The remaining five calls resulted in voicemail messages.  <u>Id.</u>

Ms. Denova's own statements are also internally inconsistent.  She states both that she began receiving calls on April 16, 2013 (Denova's Material Facts at ¶3) and also that she spoke with an Ocwen representative in "early 2012, shortly after Ocwen began servicing the mortgage" and told Ocwen to stop calling at that time.  <u>Id.</u> at ¶ 12.  Yet, on the first, and only time, that Ms. Denova spoke with Ocwen on April 19, 2013, she states: "I don't know who you are" and "I don't have a mortgage with you."  Ortwerth Dec., Exh. 4 at 2:14, 2:20-21, and 3:4-5.  If Ms. Denova spoke with Ocwen in "early 2012," logic would dictate that she should have known who Ocwen was by April 2013.

Because Ms. Denova's testimony is internally inconsistent and directly contradicted by both her documents and Ocwen's business records, this Court may disregard Ms. Denova's assertions regarding her communications with Ocwen.  Thus, Plaintiff has not met her burden of establishing willfulness under the TCPA and her demand for treble damages should be denied.

Finally, an award of treble damages to Ms. Denova would be excessive, especially when compared to the alleged injury suffered by Plaintiff.  Ms. Denova does not plead that she suffered any actual injury other than a bare procedural violation of the statute.  Such damages would constitute an excessive fine or penalty without the substantive or procedural safeguards guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.  United States v. Dish Network, LLC, 256 F. Supp. 3d 810, 952 (C.D. Ill. Jun. 5, 2017) (finding that a TCPA statutory damages award was so excessive that it constituted a violation of due process and reducing the amount of the award); Maryland v. Universal Elections, Inc., 862 F. Supp. 2d 457, 465 (D. Md. 2012) ("While the TCPA's damages provisions appear constitutional on their face, damages may become unconstitutional as applied in an individual case.  In such situations, a damages aware may violate due process or constitute an 'excessive fine'. . .")

II.     **Ocwen did not violate the FDCPA or FCCPA because it did not harass Ms. Denova or communicate with her after it knew she was represented by an attorney.**

A.    <u>Other than her own unsupported, self-serving statements, Ms. Denova cannot point to any conduct that constitutes harassment under the FDCPA or FCCPA</u>[7]

As this Court concluded, there is "no bright-line rule for determining whether a communication is abusive or harassing exists; instead, the debt collector's actions 'must be evaluated as a whole under the circumstances.'" <u>Denova v. Ocwen Loan Servicing, LLC</u>, No. 8:17-cv-02204-23AAS, 2018 U.S. Dist. LEXIS 6695, at \*8 (quoting <u>Ortega v. Collectors Training Inst. Of Illinois, Inc.</u>, No. 09-21744-CIV-GOLD/MCALILEY, 2010 U.S. Dist. LEXIS 150657 (S.D. Fla. Mar. 31, 2010)).  Rather, as discussed in Ocwen's Motion for Summary Judgment, Courts have found that "[a]bsent any other indicia of harassment," evidence that a defendant called a plaintiff numerous times "creates no genuine issues of material fact" as to whether the defendant harassed the plaintiff.  <u>Grimsley v. Palm Beach Credit Adjusters, Inc.</u>, 691 F. App'x 576, 580 (11th Cir. 2017).  Ms. Denova correctly notes that "[i]n determining whether calls are harassing the Court must consider 'not only the frequency of the calls but also the legitimacy of the creditor's claim, the plausibility of the debtor's excuse, the sensitivity or abrasiveness of the personalities, and all other circumstances that color the transaction.'"  Dkt. 42 at 20 (quoting <u>Story v. Fields</u>, 343 So. 2d 675, 677 (Fla. 1st DCA 1977).

Here, other than the frequency of calls,[8] Ms. Denova claims only that Ocwen's calls were harassing because Ocwen knew she was represented by an attorney and because she

---

[7] Although Ms. Denova claims that she also received letters from Ocwen, based on the allegations in her Motion for Summary Judgment it does not appear that she is arguing that any of the alleged letters form the basis of her FDCPA claim brought pursuant to 15 U.S.C. §1692d or her FCCPA claim brought pursuant to §559.72(7).

"repeatedly" told Ocwen to stop calling.  <u>See</u> Dkt. No. 42 at 21.  But the evidence does not

support those claims.  As discussed in I.E, <i>infra</i>, Ms. Denova's deposition testimony

regarding her requests for the calls to stop is flatly contradicted by the documentary evidence

that she talked with Ocwen on only one occasion.  Ortwerth Dec., Exh. 4.  Because Ms.

Denova's deposition testimony is both "internally inconsistent" and completely contradicted

by the undisputed evidence in the record, this Court should disregard Ms. Denova's

deposition testimony as to the number of times she spoke with Ocwen by phone in favor of

the undisputed evidence.  <u>United States v. Davis,</u> 809 F. 2d at 1513.

Further, as a matter of law, call volume alone is insufficient to show harassment

under either the FDCPA or FCCPA.  <u>See e.g.,</u> <u>Harrington v. RoundPoint Mortgage Servicing</u>

<u>Corporation</u>, 290 F. Supp. 3d 1306, 1309 (M.D. Fla. Nov. 30, 2017) (granting summary

judgment to defendant and finding that 260 calls in a less than one year period did not

constitute harassment); <u>see also,</u> <u>Tucker v. CBE Group, Inc.</u>, 710 F. Supp. 2d 1301, 1308

(M.D. Fla. 2010) (awarding summary judgment to defendant even where plaintiff showed

that he had been called up to 7 times in a single day); <u>Pugliese v. Prof'l Recovery Serv.</u>, No.

09-12262, 2010 WL 2632562, at * 10 (E.D. Mich. Jun. 29, 2019) (finding that 350 calls in an

eight month period was insufficient to constitute harassment, even after plaintiff presented

---

[8] Ms. Denova asks this Court to find that 1500 calls in a three year period is "clearly
harassment or abuse."  However, only those calls within the 2 years preceding the filing of
the Complaint are actionable under the FCCPA (Fla. Stat. 559.77(4)) and only those calls
within the 1 year preceding the filing of the Complaint are actionable under the FDCPA (15
U.S.C. §1692k(d)).  Ms. Denova has not provided any evidence to demonstrate how many
calls she received during the applicable statute of limitations periods.  Ortwerth Dec., Exh. 2.

evidence of repeated requests for the calls to stop).  Here, Plaintiff has not demonstrated the number of calls she received in the statute of limitations period.

Ms. Denova thus has not demonstrated sufficient evidence to show that Ocwen's calls to her were harassing and so she is not entitled to judgment as a matter of law.

B.   Ocwen did not know that Ms. Denova was represented by an attorney at the time it placed calls to her.

Ms. Denova argues that Ocwen knew she was represented by an attorney when it called her because her attorney filed a notice of appearance in a 2009 foreclosure action. Plaintiff's Material Facts at ¶6.  Courts in this district have repeatedly held that notices of appearance filed in foreclosure actions are insufficient to "put a debt collector on notice that a debtor is represented by counsel." Wolhuter, 2015 WL 12819153, at *5.  Furthermore, courts have repeatedly held that a "creditor's knowledge is not imputed onto the debt collector." See Cavanaugh v. HSBC Card Services, Inc., No. 3:10-cv-356-HES-TEM, 2010 WL 3746260, at *2 (M.D. Fla. Sep. 22, 2010); see also Wright v. Select Portfolio Servicing, Inc., 8:14-CV-2298-T-30TGW, 2015 WL 419618 (M.D. Fla. Feb. 2, 2015) (dismissing plaintiff's FDCPA and FCCPA claims because a notice of appearance in the foreclosure action, which defendant, SPS, was not a party to, was "insufficient as a matter of law to place SPS on notice that [plaintiffs] were represented by counsel"); Carbonell v. Frederick J Hannah & Associates, P.C., 1:14-CV-21689-UU, 2014 WL 12580524 (S.D. Fla. Aug. 1, 2014) (rejecting an argument that Defendant debt collector for a student loan debt had notice that plaintiff was represented by counsel based on the notice of appearance in the cases where Defendant was not a party to the litigation).

Although Judge Bucklew recently denied a motion to dismiss, holding that a notice of appearance in the foreclosure action is sufficient to give notice that the debtor is represented by an attorney if the foreclosure action seeks a deficiency judgment, that case is distinguishable because the defendant in the FDCPA/FCCPA case was also the named plaintiff in the foreclosure action.  France v. Ditech Fin., LLC, 8:17-cv-3038-T24-MAP, 2018 WL 1695405, at *3 (M.D. Fla. Apr. 6, 2018).  This case is more like Wolhuter where the Court held that the two notices of appearance filed in the foreclosure action were insufficient to put a mortgage servicer on notice that plaintiff was represented by an attorney because the servicer was not a party to the foreclosure action.  2015 WL 12819153, at *5. The Court found that such a notice was insufficient as against the servicer even where the servicer was (1) provided with knowledge, by the creditor, that plaintiff was represented by an attorney, (2) the servicer was involved in hiring new foreclosure counsel to represent the creditor in the foreclosure action, and (3) the servicer actually spoke with the plaintiff's attorney on several occasions during the course of the foreclosure.  Id.

Ocwen's involvement in the foreclosure action was less than that in Wolhuter.  Here, Ocwen as servicer, "just picked up where Litton was at in terms of working with foreclosure counsel to . . . execute documents, affidavits for purposes of foreclosure and provide foreclosure counsel documents for those to continue the case."  Kearse Dep. at 134:16-20. The foreclosure action at issue in this case was filed in 2009 — nearly two years before Ocwen acquired the servicing rights.  Denova's Material Facts, Exh. K.   Ms. Denova provides no other evidence to show that Ocwen had "actual knowledge" that she was represented by an attorney.  Denova, No. 8:17-cv-02204-23AAS, 2018 U.S. Dist. LEXIS

24

66956, at *17 (M.D. Fla. Jan. 25, 2018).  Furthermore, Ocwen was never provided with notice that Ms. Denova was represented by an attorney with respect to the debt.  Kearse Dep. at 134:21-24.

Because the facts contradict Ms. Denova's claim that Ocwen communicated with her after it had knowledge that she was represented by an attorney, her summary judgment motion should be denied.

## Conclusion

For the foregoing reasons, Ocwen respectfully requests that the Court deny Ms. Denova's Motion for Summary Judgment, and grant any such other relief that the Court deems equitable and just.

Respectfully submitted this 14th day of November, 2018,

/s/ Aliza Malouf_____
Aliza Malouf
Florida Bar No. 1010546
Hunton Andrews Kurth LLP
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
(214) 979-8229
amalouf@huntonak.com
Counsel for Defendant Ocwen Loan
Servicing, LLC

**CERTIFICATE OF SERVICE**

     I certify that on November 14, 2018, the foregoing document was electronically filed with the Clerk of Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                    */s/ Aliza Malouf*
                    Aliza Malouf