**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**DENISE DENOVA,**

**Plaintiff,**

**v.** **Case No. 8:17-cv-2204-T-23AAS**

**OCWEN LOAN SERVICING,**

**Defendant.**
**_______________________________________/**

# REPORT AND RECOMMENDATION

The Telephone Consumer Protection Act (TCPA) prohibits any person from using an automatic telephonic dialing system (ATDS) or prerecorded voice to call another individual's cell phone. Ocwen Loan Servicing used an Aspect dialing system to call Denise Denova's cell phone numerous times. At issue here is whether Ocwen's actions violated the TCPA. Also at issue is whether Ocwen's actions violated the Fair Debt Collection Practices Act (FDCPA) and Florida Consumer Collection Practices Act (FCCPA).

## I. BACKGROUND[1]

In 2003, Denova took out a mortgage with Ryland Mortgage Company to buy a home in Holiday, Florida.[2] Bank of New York Mellon later obtained Denova's note and mortgage.[3] Denova stopped paying her mortgage in 2009.[4] That same year, Litton Loan Servicing began servicing Denova's loan.[5] Ocwen eventually obtained Denova's delinquent mortgage from Litton and began servicing her loan in 2011.[6]

Between April 2013 and May 2016, Ocwen called Denova's cell phone 1,645 times using its Aspect dialing system.[7] The purpose of Ocwen's calls to Denova was to service or collect payments on her delinquent mortgage.[8]

---

[1] On the same day as their dispositive motion deadline, the parties moved to file their motions for summary judgment under seal. They then had difficulty following orders concerning filing redacted and unredacted versions of their motions. The result of the parties' actions is a thoroughly confusing docket. For purposes of a clear record, this report will cite each relevant docket entry when citing to evidence the parties submitted to support their respective motions.

[2] Doc. 66-1, p. 5; Doc. 43-1, p. 5; Doc. 79-1, p. 29.

[3] *Id.*

[4] Doc. 67-1, p. 11; Doc. 41-1, p. 11; Doc. 75-2, p. 11.

[5] Doc. 67-9, p. 2; Doc. 41-9, p. 2; Doc. 75-10, p. 2.

[6] Doc. 67-5, p. 32; Doc. 41-5, p. 32; Doc. 75-6, p. 32.

[7] Doc. 67-4; Doc. 41-4; Doc. 75-5.

[8] Doc. 67-5, pp. 33–34; Doc. 41-5, pp. 33–34; Doc. 75-6, pp. 33–34.

Denova alleges Ocwen's calls to her cell phone violated the TCPA, FDCPA, and FCCPA. (Doc. 1). Ocwen denies Denova's allegations. (Doc. 3). After discovery closed, the parties submitted cross-motions for summary judgment. (Docs. 42, 43).

## II. STANDARD

An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986). The nonmoving party must "go beyond the pleadings and her own affidavits," and she must point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Id.*

"It is the function of the jury to observe demeanor and listen to testimony in order to determine the credibility of witness." *United States v. Davis*, 809 F.2d 1509, 1512–13 (11th Cir. 1987) (citation omitted). So, if evidence requires credibility determinations or deciding factual inferences in the moving party's favor, summary judgment is inappropriate because the duty to weigh

credibility and evidence belongs to the jury when the judge is not the factfinder. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (quotation and citation omitted). Further, all record evidence is reviewed with inferences construed in the nonmoving party's favor. *Id.* at 1192–93 (citation omitted).

Summary judgment need not be granted simply because the parties submit cross-motions for summary judgement. *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quotation and citation omitted). That said, cross-motions for summary judgment might establish "the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Bricklayers, Masons and Plasterers Int'l Union of Am. v. Stuart Plastering Co., Inc.*, 512 F.2d 1017, 1023 (5th Cir. 1975).[9]

The standard for summary judgment under Rule 56 remains unaffected when the parties submit cross-motions for summary judgment. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005) (citation omitted). Each motion is considered on its own merits and reasonable inferences are resolved "against the party whose motion is under

---

[9] The former Fifth Circuit's decisions are binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

consideration." *Torres v. Rock & River Food, Inc.*, 244 F. Supp. 3d 1320, 1327–28 (S.D. Fla. 2016) (Scola, J.) (citing *American Bankers*).

## III. ANALYSIS

Denova brings claims under Sections 559.72(7) and 559.72(18) of the FCCPA (Counts I, II, and III); Sections 1692c(a)(2), 1692d, and 1692d(5) of the FDCPA (Counts IV, V, and VI); and Section 227(b)(1)(A)(iii) of the TCPA (Count VII). (Doc. 2). Both parties seek summary judgment on all claims. This report will therefore analyze whether summary judgment on each claim is appropriate for either party—beginning with Denova's claim under the TCPA.

### A. The TCPA Claim

In relevant part, the TCPA prohibits any person from calling without prior express consent another individual's cell phone using an ATDS or "an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii). An ATDS is equipment "which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." § 227(a)(1).[10]

---

[10] Whether a system qualifies as an ATDS under the TCPA is usually a legal question decided at summary judgment. *See Heard v. Nationstar Mortg., LLC*, No. 2:16-CV-00694-MHH, 2018 WL 4028116, at *4 (N.D. Ala. Aug. 23, 2018) (Haikala, J.) (determining whether a system is an automatic dialer at summary judgment when the parties agreed about the system's features).

To succeed on a claim under Section 227(b)(1)(A)(iii) of the TCPA, the plaintiff must prove the following: (1) the defendant called the plaintiff's cell phone (2) using an automatic telephone dialing system (ATDS) or prerecorded voice (3) without the plaintiff's prior express consent. *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012) (Honeywell, J.) (citations omitted); *Baxter v. VSC, LLC*, No. 8:17-CV-1718-T-17TGW, 2018 U.S. Dist. LEXIS 41650, at *15 (M.D. Fla. Mar. 13, 2018) (Wilson, Mag. J.) (citations omitted).

The parties do not dispute that Ocwen called Denova's cell phone. Therefore, the cross-motions for summary judgment hinge on (1) whether Ocwen called Denova using an ATDS or prerecorded voice and (2) whether Ocwen had Denova's prior express consent for calls to her cell phone.

1. <u>Whether Ocwen called Denova using a prerecorded voice or ATDS.</u>

The TCPA prohibits phone calls "using any automatic telephone dialing system or an artificial or prerecorded voice." § 227(b)(1)(A). If a person uses an artificial or prerecorded voice to call another individual's cell phone, that violation under the TCPA is separate from a violation stemming from the use of an ATDS. *Lardner v. Diversified Consultants, Inc.*, 17 F. Supp. 3d 1215, 1223 (S.D. Fla. 2014) (Ungaro, J.) (citation omitted).

Denova argues Ocwen violated the TCPA by calling Denova's cell phone (1) using an artificial or prerecorded voice and (2) using an ATDS.[11] This report will analyze separately Ocwen's alleged violations under the TCPA because those violations are separate under the statute.

*a. Artificial or Prerecorded Voice*

The parties do not dispute that Ocwen called Denova's cell phone 152 times using a prerecorded voice.[12] Denova satisfies the requirement of proving Ocwen called her cell phone 152 times using an artificial or prerecorded voice.

*b. ATDS*

Denova argues the Aspect dialing system Ocwen used to call her cell phone is an ATDS under the TCPA. According to Denova, Ocwen called her cell phone 1,493 times using the Aspect system. Denova argues the Aspect system has "predictive dialer capabilities that stores telephone numbers and then automatically dials them in a prescribed sequence without human intervention at the time of the call."[13] Denova concludes summary judgment in her favor is appropriate because Ocwen's Aspect system is an ATDS under

---

[11] Doc. 68, pp. 5–6; Doc. 42, pp. 5–6; Doc. 76-1, pp. 5–6.

[12] Doc. 67, p. 6; Doc. 41, p. 6; Doc. 75-1, p. 6.
Doc. 79-2, p. 11; Doc. 52, p. 10.

[13] Doc. 68, p. 6; Doc. 42, p. 6; Doc. 76-1, p. 6.

current orders the Federal Communications Commission (FCC) issued, a recent decision from the D.C. Circuit, and recent district court decisions.

Ocwen argues its Aspect dialing system is not an ATDS under the TCPA because Ocwen's Aspect dialers lack the present capacity to generate random or sequential numbers. For support, Ocwen cites recent district court decisions holding that its Aspect dialing system and similar dialing systems fail to qualify as an ATDS under the TCPA. Ocwen concludes summary judgment in its favor is appropriate because its Aspect dialing system is not an ATDS as a matter of law.

An ATDS is equipment "which has the capacity (a) to store or produce telephone numbers to be called, using a random or sequential number generator; and (b) to dial such numbers." § 227(a)(1). Since 1992, the FCC has periodically issued orders and declaratory rulings to clarify what actions constitute statutory violations under the TCPA.[14] Most relevant here, in 2008, the FCC concluded that a predictive dialer qualifies as an ATDS under the TCPA. 23 FCC Rcd. at 566. "A predictive dialer is an automated dialing

---

14 In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 7 FCC Rcd. 8752 (1992); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014 (2003); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559 (2008); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd. 15391 (2012); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 FCC Rcd. 7961 (2015).

system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call." 18 FCC Rcd. at 14022, n.31.

In its 2003, 2008, and 2012 orders, the FCC affirmed that the TCPA's definition of an ATDS, which includes predictive dialers, "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." 27 FCC Rcd. at 15392, n.5 (citations omitted).

Until March 2018, courts uniformly held that calls using predictive dialers violated the TCPA's prohibition against calls using an ATDS. *Gonzalez v. HOSOPO Corp.*, 371 F. Supp. 3d 26, 30 (D. Mass. 2019) (Saylor, J.).[15] Then, the D.C. Circuit decided *ACA International v. Federal Communications Commission*, 885 F.3d 687 (2018).

*ACA International* invalidated parts of the FCC's 2015 order. 885 F.3d at 692. Most relevant here, the FCC's 2015 order reaffirmed its earlier orders concerning the definition of an ATDS under the TCPA. *See ACA Int'l*, 885 F.3d

---

15 *Gonzalez* provides a helpful overview of the development of caselaw on the definition of ATDS under the TCPA.

at 701 (stating "the Commission's latest ruling purports to reaffirm the prior orders"). But *ACA International* found the following:

> While the 2015 ruling indicates in certain places that a device must be able to generate and dial random or sequential numbers to meet the TCPA's definition of an autodialer, it also suggests a competing view: the equipment can meet the statutory definition even if it lacks that capacity.

*ACA Int'l*, 885 F.3d at 702.

*ACA International* invalidated the 2015 Order's treatment of what qualifies as an ATDS because of the order's "lack of clarity on the subject." *Id.* at 703.[16] That ruling began a wave of inconsistent decisions in TCPA case law.

In the wake of *ACA International*, circuit and district courts split on what type of dialing systems qualify as an ATDS under the TCPA. The Ninth and Second Circuits hold that *ACA International* invalidated not only the 2015 order's treatment of what qualifies as an ATDS but also the pre-2015 orders' treatment of what qualifies as an ATDS under the TCPA. *See Marks v. Crunch San Diego*, 904 F.3d 1041, 1049 (9th Cir. 2018) (Ikuta, J.) (citation omitted) (holding that *ACA International* invalidated "any prior FCC rules that were reinstated by the 2015 order"); *King v. Time Warner Cable, Inc.*, 894 F.3d 473, 477 (2d Cir. 2018) (stating that, after *ACA International*, "we must decide

[16] *ACA International* also invalidated the 2015 Order's one-call safe harbor rule. 885 F.3d at 705.

independently . . . [what] a device must have in order to qualify as an ATDS under the TCPA . . . .").

The Third Circuit, on the other hand, suggests that *ACA International* invalidated only the 2015 order's treatment of what qualifies as an ATDS under the TCPA. *See Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) (Roth, J.) (stating that, after *ACA International*, "we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015 Declaratory Ruling").

District courts also split on the effect of *ACA International*. *Compare Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 932 (N.D. Ill. 2018) (concluding that *ACA International* also invalidated the FCC's 2008 declaratory ruling's and 2003 order's interpretation of ATDS) *with Maes v. Charter Commc'n*, 345 F. Supp. 3d 1064, 1065 (W.D. Wisc. 2018) (concluding that the FCC's 2003 order remains valid after *ACA International*).

And district courts within this circuit are split on *ACA International*'s effect. *Compare Glasser v. Hilton Grand Vacations Co., LLC*, 341 F. Supp. 3d 1305, 1309 (M.D. Fla. 2018) (Whittemore, J.) (stating that *ACA International* "left intact earlier FCC rulings")[17] *with Sessions v. Barclays Bank Del.*, 317 F. Supp. 3d 1208, 1212 (N.D. Ga. 2018) (May, J.) (concluding that *ACA*

---

[17] *Glasser* is currently on appeal.

*International* "invalidated all of the FCC's pronouncements" on the definition of an ATDS).

More courts in this district hold that the FCC's pre-2015 declaratory rulings and orders remain valid after *ACA International*. *See, e.g.*, *Glasser*, 341 F. Supp. 3d at 1309; *Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1321 (S.D. Fla. 2018) (Goodman, Mag. J.); *Ramos v. Hopele of Ft. Lauderdale*, 334 F. Supp. 3d 1262, 1272 (S.D. Fla. 2018) (Seltzer, Mag. J.).[18]

The rule holding that the pre-2015 FCC orders and declaratory rulings remain valid after *ACA International*, should govern here.[19] Under the pre-2015 FCC orders, a predictive dialer qualifies as an ATDS under the TCPA.

---

[18] *See also Maddox v. CBE Grp., Inc.*, No, 1:17-CV-1909-SCJ, 2018 WL 2327037, at *5 (N.D. Ga. May, 22, 2018) (Jones, J.) (concluding that the 2003 FCC order's interpretation of an ATDS remains valid after *ACA International*); *Swaney v. Regions Bank*, No. 2:13-CV-00544-JHE, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018) (Proctor, J.) (same). *But see Gonzalez v. Ocwen Loan Servicing*, No. 5:18-CV-340-Oc-30PRL, 2018 WL 4217065, at *6 (M.D. Fla. Sept. 5, 2018) (Moody, J.) (concluding that *ACA International* "necessarily vacated the definition in the prior FCC orders that the 2015 order merely reaffirmed"); *Adams v. Ocwen Loan Servicing*, 366 F. Supp. 3d 1350, 1354 (S.D. Fla. 2018) (Dimitrouleas, J.) (concluding that ACA International "voided and vacated" the FCC's 2003 and 2008 order concerning the definition of an ATDS); *Evans v. Pa. Higher Educ. Assistance Agency*, No. 3:16-CV-82-TCB, 2018 WL 6362637, at *2 (N.D. Ga. Oct. 11, 2018) (Batten, J.) (concluding that *ACA International* "vitiated" the pre-2015 FCC orders).

[19] District courts must defer to the FCC's interpretation of the TCPA. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015); *but see PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2058 (2019) (Kavanaugh, J., concurring) (stating that district courts are not bound by the FCC's interpretation of the TCPA).

18 FCC Rcd. at 14093; 23 FCC Rcd. at 566; *Ramos*, 334 F. Supp. 3d at 1269–70 (citations omitted); *Reyes*, 312 F. Supp. 3d at 1319–20 (citations omitted).[20]

The parties here do not dispute Ocwen's Aspect dialing system is a predictive dialer.[21] And the parties do not dispute Ocwen called Denova's cell phone 1,493 times using its Aspect dialing system.[22] So, Denova satisfies the requirement of proving Ocwen called her cell phone 1,493 times using an ATDS.

2. Whether Ocwen had Denova's prior express consent.

Denova argues she never gave her cell phone number to Ocwen and therefore never consented to receive calls to her cell phone from Ocwen. Ocwen admits Denova never gave her cell phone number to Ocwen.[23] But Ocwen points out Denova listed her cell phone number on her original loan application.

---

[20] Courts that conclude *ACA International* invalidated all pre-2015 FCC orders also conclude that Aspect systems fail to qualify as an ATDS under the TCPA. *See, e.g.*, *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951, 961 (E.D. Mich. 2018) (concluding that Aspect system failed to qualify as an autodialer).

[21] Doc. 67, pp. 7–8; Doc. 41, pp. 7–8; Doc. 75-1, pp. 7–8.
Doc. 66, p. 8; Doc. Doc. 43, p. 8; Doc. 79-1, p. 9.

[22] Doc. 67, p. 2; Doc. 41, p. 2; Doc. 75-1, p. 2.
Doc. 79-2, p. 8; Doc. 52, p. 7.

[23] Doc. 79-2, p. 9; Doc. 52, p. 8.

The TCPA exempts calls made with an individual's prior express consent from the prohibition against calls to cell phones using an ATDS or prerecorded voice. § 227 (b)(1)(A). An individual may revoke her prior express consent orally or in writing. *Osorio v. State Farm Bank*, 746 F.3d 1242, 1255 (11th Cir. 2014). The defendant bears the burden of proving it had prior express consent. *Murphy*, 797 F.3d at 1305–06 (noting that "prior express consent" is an affirmative defense under the TCPA); *Augustin*, 43 F. Supp. 3d at 1253 (citation omitted); *Gambon v. R&F Enterprises, Inc.*, No. 6:14-CV-403-Orl-18GJK, 2015 WL 64561, at *4 (M.D. Fla. Jan. 5, 2015) (Sharp, J.) (citations omitted).

When a person lists a phone number on a credit or loan application, she consents to the creditor calling, for debt-collection purposes, the phone she listed on the application. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1122 (11th Cir. 2014) (discussing how FCC orders interpret "prior express consent"). A caller need not obtain the person's express consent directly but may obtain consent from the original party who obtained the individual's credit or loan application. *See id.* at 1123–24 (rejecting argument that a creditor must receive the individual's number directly to qualify under TCPA's express-consent exemption).

Whether an individual gave or revoked her consent is normally an issue for the factfinder to determine. *See Osorio*, 746 F.3d at 1254 (finding genuine

dispute of material fact existed about whether the defendant had prior express consent); *see also Schweitzer v. Comenity Bank*, 866 F.3d 1273, 1279 (11th Cir. 2017) (finding that a reasonable jury could conclude the plaintiff partially revoked her prior express consent).

A genuine dispute of material fact exists about whether Denova revoked any express consent Ocwen obtained through Denova's original loan application. Denova listed her cell phone number (the same one Ocwen later called) on her loan application to Ryland Mortgage Company in 2003.[24] When Litton Loan Servicing began servicing Denova's loan, Denova sent Litton a letter, in which she demanded Litton stop contacting her.[25] Denova's letter to Litton includes the following paragraph:

> This letter is your formal notification that I consider this matter closed and demand that you, or anyone affiliated with your company, stop contacting me regarding this or any other matter except to advise me that your debt collection efforts are being terminated or that you or the creditor are taking specific actions allowed by the FDCPA or my state laws.[26]

---

[24] Doc. 79-2, pp. 51–55; Doc. 52-1, pp. 18–22.

[25] Doc. 67-7; Doc. 41-7; Doc. 75-8.

[26] *Id.*

Crystal Kearse, a senior loan analyst at Ocwen, testified that Ocwen had a copy of Denova's letter to Litton and Ocwen possessed no other documents containing Denova's express consent to calls at her cell phone.[27]

Denova testified that she spoke to Ocwen representatives over the phone eight to ten times and told them to stop calling her cell phone.[28] Kearse, on the other hand, testified that Ocwen records show that Denova spoke to an Ocwen representative only once.[29] The transcript of the alleged one call, during which Denova spoke to an Ocwen representative, shows Denova never told the representative to stop calling her cell phone.[30]

Further, Ocwen disputes whether Denova's letter to Litton constitutes "effective revocation" because, in her letter, Denova specifically allows Litton to call her "to advise [her] that [Litton's] debt collection efforts are being terminated" or if Litton took actions allowed under the FDCPA or state law.[31]

In light of the conflicting evidence about the issue of Denova's consent, a genuine dispute of material fact exists. A reasonable jury could conclude that Denova's letter to Litton constituted revocation of any prior express consent

---

[27] Doc. 67-5, pp. 47–48, 51; Doc. 41-5, pp. 47–48, 51; Doc. 75-6, pp. 47–48, 51.

[28] Doc. 67-1, pp. 22–23; Doc. 41-1, pp. 22–23; Doc. 75-2, pp. 22–23.

[29] Doc. 67-5, p. 143; Doc. 41-5, p. 144; Doc. 75-6, p. 144.

[30] Doc. 79-1, pp. 82–89; Doc. 43-1, pp. 58–65; Doc. 66-1, pp. 58–65.

[31] Doc. 79-2, p. 9 (citation omitted).

she gave when she completed her loan application. If the jury concludes Denova revoked any prior express consent, then a jury could find Ocwen had no consent to call Denova's cell phone.

A reasonable jury could also conclude Denova's language in her letter to Litton allowed Litton, or its successor (Ocwen), to call her cell phone consistent with federal law. If the jury concludes that Denova's letter allowed Ocwen to call her cell phone, then the jury would have to weigh Denova's credibility when deciding whether she told an Ocwen representative over the phone eight to ten times to stop calling her cell phone. The jury would have to weigh Denova's testimony against Ocwen's records, which show Denova only spoke to an Ocwen representative once and never expressly told that representative to stop calling her cell phone. Considering the conflicting testimony and evidence, summary judgment in either party's favor is inappropriate because the duty to weigh conflicting evidence belongs to the jury.

* * *

Denova establishes that Ocwen called her cell phone 152 times using an artificial or prerecorded voice and 1,493 times using an ATDS. But a genuine dispute of material fact exists about whether Denova expressly consented to calls to her cell phone. Consequently, both parties' motions for summary

judgment should be denied with respect to Denova's claim under the TCPA (Count VII).[32]

**B. The FDCPA Claims**

To obtain summary judgment on an FDCPA claim, the plaintiff must prove (1) she was an object of collection activity arising from consumer debt; (2) the defendant is a debt collector under the FDCPA; and (3) the defendant engaged in activity the FDCPA prohibits. *Goodin v. Bank of America, N.A.*, 114 F. Supp. 3d 1197, 1204 (M.D. Fla. 2015) (Corrigan, J.) (citation omitted).

The parties do not dispute that this case involves consumer debt.[33] So, whether summary judgment is appropriate with respect to Denova's FDCPA claims depends on (1) whether Ocwen is a debt collector under the FDCPA and (2) whether Ocwen engaged in activity the FDCPA prohibits. But before addressing the two remaining elements under the FDCPA, this report will address Ocwen's argument concerning the FDCPA's statute of limitations.

---

[32] Ocwen argues Denova has no standing to bring her claim under the TCPA. But the TCPA creates a cognizable right that gives a person Article III standing. *Florence Endocrine Clinic, PLLC v. Arriva Med., LLC*, 858 F.3d 1362, 1366 (11th Cir. 2017) (Pryor, J.) (citations omitted); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 456 (M.D. Fla. 2018) (Jung, J.) (citations omitted). Therefore, Ocwen's standing argument should not succeed.

[33] Doc. 67, p. 2 (stating, in the fourth paragraph of undisputed facts, that Ocwen called Denova "in an attempt to collect a consumer debt"); Doc. 79-2, p. 8 (disputing Denova's fourth paragraph only "to the extent that it characterizes Ocwen as a debt collector").

1. Whether the statute of limitations applies.

A plaintiff must sue a debt collector within one year of an alleged FDCPA violation. 15 U.S.C. § 1692k(d); *Rivas v. The Bank of N.Y. Mellon*, 676 F. App'x 926, 929 (11th Cir. 2017) (citation omitted). Denova began this lawsuit against Ocwen on February 1, 2017. (Doc. 1). Here, any calls before February 1, 2016, are time-barred under the FDCPA. Out of the 1,645 calls Denova alleges violate the FDCPA, 1,374 calls occurred before February 1, 2016.[34] Accordingly, summary judgment should be entered in Ocwen's favor against Denova's claims under the FDCPA (Counts IV, V, and VI) with respect to the 1,374 calls that occurred before February 1, 2016.

From February 1, 2016, to May 16, 2016, Ocwen called Denova's cell phone 271 times.[35] This report will now analyze whether summary judgment in either party's favor is appropriate for the remaining 271 calls.

2. Whether Ocwen is a debt collector under the FDCPA.

Under the FDCPA, a debt collector is any person who regularly attempts to collect debts. 15 U.S.C. § 1692a(6); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012).

---

[34] Doc. 67-4, pp. 1–42; Doc. 41-4, pp. 1–42; Doc. 75-5, pp. 1–42.

[35] Doc. 67-4, pp. 42–48; Doc. 41-4, pp. 42–48; Doc. 75-5, pp. 42–48.

Ocwen states it "is a mortgage servicer and only falls under the definition of a debt collector under the FDCPA in limited circumstances."[36] But Ocwen also admits it "engages in collections activity."[37] To support its contention that it is a "debt collector in limited circumstances," Ocwen cites Kearse's deposition, in which she testified Ocwen is a loan servicer.[38] Ocwen points to no other evidence showing it does not regularly attempt to collect debts.

Denova, on the other hand, cites evidence showing Ocwen regularly attempts to collect debts. For example, Denova cites letters Ocwen sent to Denova about her delinquent mortgage.[39] Those letters include the following statement:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose.[40]

Denova also cites Kearse's deposition, in which Kearse testified that the primary reason Ocwen first called Denova was to "maybe assist in modifying the loan or setting up a repayment plan."[41] Denova provides a printout from

---

[36] Doc. 79-2, p. 8; Doc. 52, p. 7.

[37] Doc. 66, p. 7; Doc. 43, p. 7; Doc. 79-1, p. 8.

[38] Doc. 67-5, p. 135; Doc. 41-5, p. 136; Doc. 75-6, p. 136.

[39] Doc. 67-6; Doc. 41-6; Doc. 75-7.

[40] Doc. 67-6, p. 3; Doc. 41-6, p. 3; Doc. 75-7, p. 3.

[41] Doc. 67-5, pp. 46–47; Doc. 41-5, pp. 46–47; Doc. 75-6, pp. 46–47.

the Florida Office of Financial Regulation showing Ocwen licensed as a "consumer collection agency."[42] And Denova cites mortgage account statements, which list the amount due, Ocwen sent to Denova.[43]

Considering Ocwen's admission that it "engages in collections activity," the lack of evidence Ocwen submitted showing it is does not regularly attempt to collect debts, and the evidence Denova submitted showing Ocwen regularly attempted to collect her debt, no genuine dispute of material fact exists about whether Ocwen is a debt collector under the FDCPA. Denova therefore satisfies the second requirement for succeeding on claims under the FDCPA.

3. Whether Ocwen engaged in activity the FDCPA prohibits.

Denova alleges Ocwen violated three sections under the FDCPA: Section 1692c(a)(2), Section 1692d, and Section 1692d(5). This section will analyze whether Ocwen engaged in the activity those sections of the FDCPA prohibit.

*a. Section 1692c(a)(2)*

A debt collector may not communicate with a consumer about a debt if the debt collector knows the consumer is represented by an attorney. 15 U.S.C. § 1692c(a)(2). To prevail on a claim under Section 1692c(a)(2), the plaintiff must prove the debt collector had actual knowledge that she was represented

---

42 Doc. 67-8; Doc. 41-8; Doc. 75-9.

43 Doc. 67-19; Doc. 41-19; Doc. 75-20.

by an attorney. *Erickson v. Gen. Elec. Co.*, 854 F. Supp. 2d 1178, 1182 (M.D. Fla. 2012) (Dalton, J.); *Carbonell v. Frederick J Hannah Assocs., P.C.*, No. 1:14-CV-21689-UU, 2014 WL 12580524, at *2 (S.D. Fla. Aug. 1, 2014) (Ungaro, J.) (citations omitted).

Denova argues Ocwen knew she was represented by counsel because Denova told an Ocwen representative eight to ten times over the phone that she had an attorney. Denova also argues Ocwen knew she was represented by counsel because her attorney filed a notice of appearance in a state court foreclosure proceeding involving Denova's property in Holiday, Florida.

Ocwen argues that notices of appearance in foreclosure actions fail to prove a debtor has knowledge that a consumer is represented by an attorney. Ocwen points out that it began servicing Denova's loan almost two years after the foreclosure action against Denova began in state court. And Ocwen argues Denova never told Ocwen, orally or in writing, that she had an attorney. So, Ocwen concludes summary judgment in its favor is appropriate with respect to Denova's claim under Section 1692c(a)(2) of the FDCPA.

Caselaw splits on whether a notice of appearance in a foreclosure proceeding, in which the debt collector is not a party, is enough to show that a debt collector knew that the consumer was represented by counsel. *Compare Wright v. Select Portfolio Servicing, Inc.*, No. 8:14-CV-2298-T-30TGW, 2015 WL 419618, at *4–5 (M.D. Fla. Feb. 2, 2015) (Moody, J.) (holding that a notice

of appearance filed in foreclosure action failed to put debt collector on notice that consumer was represented by an attorney) *with France v. Ditech Fin., LLC*, No. 8:17-CV-3038-T-24MAP, 2018 WL 1695405, at *2–3 (M.D. Fla. Apr. 6, 2018) (Bucklew, J.) (denying motion to dismiss claim under Section 1692c(a)(2) because notice of appearance in foreclose action "was sufficient to put [debt collector] on notice that [consumer] was represented by counsel with respect to the underlying debt").[44]

Without settled law on the issue about whether a notice of appearance is enough to put a debt collector on notice that a consumer is represented by counsel, a genuine dispute of material fact exists about whether Ocwen knew Denova was represented by counsel when calling her cell phone.

On January 12, 2015—four years after Ocwen began servicing Denova's delinquent mortgage—Denova's attorney filed a notice of appearance in the state foreclosure action.[45] If Bank of New York Mellon, the party who began

[44] Whether a debt collector knows about the consumer's representation is generally a factual question. *See Alvarado v. Credit Protection Ass'n, LP*, No. 8:14-CV-447-T-33TGW, 2015 WL 1815863, at *10 (M.D. Fla. Apr. 22, 2015) (Covington, J.) (finding factual question existed about defendant's knowledge about the plaintiff's representation). *But see Wolhunter v. Carrington Mortg. Servs., LLC*, No. 8:15-CV-552-35TBM, 2015 WL 12819153, at *5 (M.D. Fla. Oct. 28, 2015) (Scriven, J.) (concluding, as a matter of law, that notices of appearance in foreclosure were insufficient to put debt collector on notice about consumer's representation) (citations omitted).

[45] Doc. 67-11, p. 4; Doc. 41-11, p. 4; Doc. 75-12, p. 12.
Doc. 67-12, p. 10; Doc. 41-12, p. 12; Doc. 75-13, p. 10.

foreclosure proceedings against Denova, learned that Denova had an attorney before January 12, 2015, Bank of New York Mellon would have been required to notify Ocwen about Denova's representation.[46] According to Kearse, Ocwen was never notified of any counsel Denova had before January 12, 2015.[47]

The evidence showing Ocwen knew no earlier than January 12, 2015, about Denova's attorney conflicts with Denova's testimony and other evidence. According to Denova, she informed Ocwen "on numerous occasions that she had an attorney."[48] Denova also testified that she told Ocwen representatives eight to ten times during Ocwen's calls to Denova's cell phone that she had an attorney.[49] But Denova's testimony is unclear about when she first told Ocwen representatives she had an attorney. For example, Denova testified that, in 2012, she told Ocwen she had an attorney.[50] Denova, however, also testified that she "spoke to [her] foreclosure attorney" in 2015.[51]

The conflicting evidence about if, and when, Denova told Ocwen she had an attorney precludes summary judgment in either party's favor. A reasonable

---

46 Doc. 67-5, pp. 133–35; Doc. 41-5, pp. 134–36; Doc. 75-6, pp. 134–36.

47 *Id.*

48 Doc. 67-3, p. 11; Doc. 41-3, p. 11; Doc. 75-4, p. 11.

49 Doc. 67-1, p. 22; Doc. 41-1, p. 22; Doc. 75-2, p. 22.

50 Doc. 67-1, p. 22; Doc. 41-1, p. 22; Doc. 75-2, p. 22.

51 *Id.*

jury could credit Denova's testimony based on her demeanor at trial, or a reasonable jury could discredit Denova's testimony because it conflicts with other admissible evidence. As a result, both party's motion for summary judgment should be denied with respect to Denova's claim under Section 1692c(a)(2) of the FDCPA.

*b. Section 1692d*

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. To determine whether a debt collector's actions constitute harassment under Section 1692d, the debt collector's actions must be "viewed from the perspective of a consumer whose circumstances make [her] relatively more susceptible to harassment, oppression or abuse." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985); *see also Smith v. Univ. Cmty. Hosp., Inc.*, No. 8:18-CV-270-T-AAS, 2019 WL 118045, at *5 (M.D. Fla. Jan. 7, 2019) (citing *Jeter*).

Whether a debt collector's action harasses, oppresses, or abuses is normally a question for the jury to decide. *Jeter*, 760 F.2d at 1179. Suffering "embarrassment, inconvenience, and further expense" is not enough to constitute harassment under Section 1692d. *Id.* (internal quotations omitted). Instead, the debt collector's actions must manifest a "tone of intimidation."

*Miljkovic v. Sharfritz and Dinkin, P.A.*, 791 F.3d 1291, 1305 (11th Cir. 2015) (quoting *Jeter*); *Smith*, 2019 WL 118045, at *5.

When determining whether a debt collector's actions violate Section 1692d, the following factors are considered:

> (1) the volume and frequency of attempts to contact the debtor, (2) the volume and frequency of contacts with the debtor, (3) the duration of the debt collector's attempted communication and collection, (4) the debt collector's use of abusive language, (5) the medium of the debt collector's communication, (6) the debtor's disputing the debt or the amount due, (7) the debtor's demanding a cessation of the communication, (8) the debt collector's leaving a message, (9) the debt collector's calling at an unreasonable hour, (10), the debtor collector's calling the debtor at work, (11) the debt collector's threatening the debtor, (12) the debt collector's lying to the debtor, (13) the debt collector's impersonating an attorney or a public official, (14), the debt collector's contacting a friend, co-worker, employee, employer, or family member, and (15) the debt collector's simulating or threatening legal process.

*Valle v. National Recovery Agency*, No. 8:10-CV-2775-T-23MAP, 2012 WL 1831156, at *1 (M.D. Fla. May 18, 2012) (footnote omitted).

The parties do not dispute that Ocwen called Denova's cell phone 271 times between February 2016 and May 2016. But this report discusses conflicting evidence concerning how many times an Ocwen representative spoke with Denova about her debt and whether Denova told Ocwen to stop contacting her about her delinquent mortgage. Further, Denova presents evidence showing Ocwen left messages on her cell phone.[52] Evidence also

---

[52] Doc. 67-5, p. 70; Doc. 41-5, p. 70; Doc. 75-6, p. 70.

shows Ocwen called Denova's cell phone during traditional work hours (9:00 a.m. to 5:00 p.m.) and after 6:30 p.m. multiple times.[53]

No evidence shows: Ocwen using abusive language toward Denova, Ocwen threatening Denova, Ocwen lying to Denova, Ocwen impersonating an attorney, Ocwen contacting Denova's friends or family, or Ocwen simulating or threatening legal process.

Considering the evidence and the *Valle* factors, a genuine dispute of material fact exists about whether Ocwen's actions harassed, oppressed, or abused Denova under Section 1692d. A reasonable jury could weigh the evidence and conclude Ocwen harassed Denova about her delinquent mortgage, or a reasonable jury could conclude Denova was not harassed. So, summary judgment in either party's favor is inappropriate with respect to Denova's claim under Section 1692d of the FDCPA.

*c. Section 1692d(5)*

A debt collector may not harass, oppress, or abuse a person by "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

---

[53] Doc. 67-4, pp. 42–48; Doc. 41-4, pp. 42–48; Doc. 75-5, pp. 42–48.

The same factors that help determine whether a debt collector harassed a consumer under Section 1692d apply to claims under Section 1692d(5). *Valle*, 2012 WL 1831156, at *1 (footnote omitted); *see also Meadows v. Franklin Collection Serv., Inc.*, 414 F. App'x 230, 233–34 (11th Cir. 2011) (reversing summary judgment entered in debt collector's favor because genuine issue of material fact existed about whether debt collector called the consumer "with the intent to annoy or harass her").

Summary judgment in either party's favor with respect to Denova's claim under Section 1692d(5) is inappropriate for the same reasons summary judgment is inappropriate with respect to Denova's claim under Section 1692d. A reasonable jury weighing the evidence could find Ocwen called Denova's cell phone 271 times with the intent to harass her, or a reasonable jury could find Ocwen had no intent to harass Denova. Both parties' motion for summary judgment with respect to Denova's claim under Section 1692d(5) should be denied.

* * *

The parties do not dispute that Denova's delinquent mortgage is a consumer debt. And Denova demonstrates that Ocwen is a debt collector under the FDCPA. But genuine disputes of material fact exist about whether Ocwen engaged in activity the FDCPA prohibits. Both parties' motions for summary judgment should be denied with respect to Denova's claims under the FDCPA

(Counts IV, V, and VI) for the 271 calls that occurred from February 1, 2016, to May 16, 2016.

**C. The FCCPA Claims**

The FCCPA has parallel requirements to the FDCPA for obtaining summary judgment. *Strauss v. CBE Grp., Inc.*, 173 F. Supp. 3d 1302, 1311 (S.D. Fla. 2016) (Cohn, J.) (quotation and citation omitted); *see also* Fla. Stat. § 559.77(5) (stating that "due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to the [FDCPA]"). That said, the FCCPA and FDCPA are not identical, "and a violation of one act does not automatically constitute a violation of the other." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1153 (Fla. 2d Dist. Ct. App. 2012) (citation omitted). As a result, a plaintiff must separately demonstrate violations of the FDCPA and FCCPA to recover damages under both acts. *Id.*

Similar to the FDCA, the plaintiff must prove three elements to obtain summary judgment under the FCCPA: (1) the plaintiff was the object of collection activity arising from consumer debt; (2) the defendant is a debt collector or person under the FCCPA; and (3) the defendant engaged in activity the FCCPA prohibits. *Kelly v. Davis*, No. 3:10CV392-MW/EMT, 2014 WL 12515345, at *7 (N.D. Fla. July 17, 2014) (Walker, J.) (citations omitted).

Before turning to whether summary judgment is appropriate on Denova's FCCPA claims, this report will address Ocwen's argument concerning statute of limitations.

1. Whether the statute of limitations applies.

The FCCPA has a two-year statute of limitations. Fla. Stat. § 559.77(4). Denova began this lawsuit on February 1, 2017. (Doc. 1). Here, the FCCPA bars recovery for any calls from Ocwen that occurred before February 1, 2015. Out of the 1,645 calls Denova alleges violate the FCCPA, 815 calls occurred before February 1, 2015.[54] Summary judgment should be entered in Ocwen's favor against Denova's claims under the FCCPA (Counts I, II, and III) for the 815 calls that occurred before February 1, 2015.

Between February 1, 2015, and May 16, 2016, Ocwen called Denova's cell phone 830 times.[55] This report will now determine whether summary judgment in either party's favor for the remaining 830 calls is appropriate with respect to Denova's claims under the FCCPA.

2. Whether Ocwen is a debt collector or person.

The FCCPA prohibits certain actions by "debt collectors" and "persons." *See Kelly*, 2014 WL 12515345, at *7–8 (analyzing the FCCPA's language). A

---

[54] Doc. 67-4; Doc. 41-4; Doc. 75-5.

[55] Doc. 67-4, pp. 30–48; Doc. 41-4, pp. 30–48; Doc. 75-5, pp. 30–48.

"person" includes corporations. Fla. Stat. § 1.01(3). Ocwen is a limited liability corporation.[56] So, Ocwen is a person under the FCCPA, and Denova satisfies the first requirement for succeeding on her FCCPA claims.

3. Whether Denova was the object of collection activity arising from a consumer debt.

Under the FCCPA, the consumer must prove that she has been the object of collection activity arising from a consumer debt. *Kelly*, 2014 WL 12515345, at *7. The parties do not dispute that this case involves consumer debt.[57] So, Denova satisfies the second requirement for succeeding on her FCCPA claims.

4. Whether Ocwen engaged in activity the FCCPA prohibits.

Denova alleges Ocwen violated Sections 559.72(7) and 559.72(18) of the FCCPA when calling her cell phone.[58] This section will analyze in turn whether Ocwen violated Sections 559.72(7) and 559.72(18).

*a. Section 559.72(7)*

Section 559.72(7) states that a person must not do the following:

> Willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in

---

[56] Doc. 67-8, p. 2; 41-8, p. 2; Doc. 75-9, p. 2.

[57] Doc. 67, p. 2 (stating, in paragraph four, that Ocwen called Denova "in an attempt to collect a consumer debt"); Doc. 79-2, p. 8 (disputing Denova's paragraph four only "to the extent that it characterizes Ocwen as a debt collector").

[58] Denova includes two separate counts (Counts I and II) for alleged violations under Section 559.72(7) of the FCCPA. (Doc. 2). This report combines the analysis for Counts I and II.

> conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family.

Fla. Stat. § 559.72(7). Whether a person's conduct harasses a debtor is usually a jury question. *Smith v. Markone Fin., LLC*, No. 2:13-CV-933-J-32MCR, 2015 WL 419005, at *6 (M.D. Fla. Feb. 2, 2015) (Corrigan, J.); *Story v. J.M. Fields, Inc.*, 343 So. 2d 675, 677 (Fla. 1st Dist. Ct. App. 1977). That said, evidence of numerous calls by itself fails to create a jury issue on liability under Section 559.72(7). *Story*, 343 So. 2d at 677. Other evidence must be considered, including the purpose and frequency of the phone calls. *Miller v. Ginny's Inc.*, 287 F. Supp. 3d 1324, 1330–31 (M.D. Fla. 2017) (Honeywell, J.) (citations omitted). Another factor that may suggest harassment under Section 559.71(7) is calling a debtor after she asks for the calls to stop. *Id.* at 1331 (citation omitted); *Fini v. Dish Network, LLC*, 955 F. Supp. 2d 1288, 1298–99 (M.D. Fla. 2013) (Conway, J.) (citations omitted).

Ultimately, no bright-line rule exists for determining what conduct constitutes harassment under Section 559.72(7). *Harrington v. Roundpoint Mortgage Servicing, Corp.*, 290 F. Supp. 3d 1306, 1319 (M.D. Fla. 2017) (Antoon, J.) (quoting *Story*).

Denova presents evidence showing Ocwen called her cell phone 830 times.[59] She testified that she told Ocwen eight to ten times to stop calling

---

[59] Doc. 67-4, pp. 30–48; Doc. 41-4, pp. 30–48; Doc. 75-5, pp. 30–48.

her.[60] Denova provides a letter she sent Litton Loan Servicing, Ocwen's predecessor, in which Denova tells Litton to stop contacting her.[61] Based on this and other evidence, a reasonable jury could find Ocwen continued to call Denova about her delinquent mortgage even after Denova asked Ocwen to stop calling her. A reasonable jury could find that these facts constitute harassment under Section 559.72(7).

Ocwen presents evidence showing that Denova spoke to an Ocwen representative only once and she never told that representative to stop calling her.[62] Ocwen also points out that Denova's letter to Litton allows Litton to call her if Litton took "specific actions allowed by . . . state laws."[63] A reasonable jury could find Denova never told Ocwen to stop calling her as long as those calls were allowed under the FCCPA. A reasonable jury could therefore find no harassment by Ocwen under Section 559.72(7).

A genuine dispute of material fact exists about whether Ocwen's actions constitute harassment. *See also Garrett v. Credit Protection Assoc., LP*, No. 8:16-CV-2999-T-33AAS, 2017 WL 3193759, at *7 (M.D. Fla. July 27, 2017)

---

[60] Doc. 67-1, pp. 22–23; Doc. 41-1, pp. 22–23; Doc. 75-2, pp. 22–23.

[61] Doc. 67-7; Doc. 41-7; Doc. 75-8.

[62] Doc. 79-1, pp. 82–89; Doc. 43-1, pp. 58–65; Doc. 66-1, pp. 58–65.

[63] Doc. 67-7; Doc. 41-7; Doc. 75-8.

(Covington, J.) (denying summary judgment under Section 559.72(7) because genuine dispute existed about whether debtor told the defendant to stop calling her and debtor received eighty-six calls in four months). Both parties' motions for summary judgment should be denied with respect to Denova's claims under Section 559.72(7) for the 830 calls that occurred between February 1, 2015, and May 16, 2016.

*b. Section 559.72(18)*

Section 559.72(18) states that a person must not do the following:

> Communicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the debtor's attorney fails to respond within 30 days to a communication from the person, unless the debtor's attorney consents to a direct communication with the debtor, or unless the debtor initiates the communication.

Fla. Stat. § 559.72(18). Summary judgment is precluded under Section 559.72(18) when conflicting evidence exists about whether the defendant had knowledge about the debtor's representation. *See Laughlin v. Household Bank, Ltd.*, 969 So. 2d 509, 513 (Fla. 1st Dist. Ct. App. 2007) (reversing summary judgment under Section 559.72(18) because issues of material fact existed about the defendant's knowledge concerning the debtor's representation).

Conflicting evidence precludes summary judgment in either party's favor in this case. Denova claims she told Ocwen in 2012, and numerous other times,

that she had an attorney.[64] But Denova also testified that she "spoke to [her] foreclosure attorney" in 2015.[65] And Ocwen provides evidence showing Denova spoke to an Ocwen representative only once and she never mentioned that she was represented by an attorney.[66] The jury has the duty to determine Denova's credibility and weigh Denova's testimony against Ocwen's evidence. A genuine dispute of material fact exists with respect to Denova's claim under Section 559.72(18). Both parties' motions for summary judgment on this claim should be denied.

* * *

The FCCPA's statute of limitation bars Denova from recovery for 815 calls completed before February 1, 2015. Summary judgment should be entered for those 815 calls in Ocwen's favor against Denova's FCCPA claims.

For the remaining 830 calls, Denova establishes that Ocwen is a person under the FCCPA and she was the object of collection activity arising from consumer debt. But genuine disputes of material fact exist with respect to whether Ocwen's actions violated the FCCPA. Accordingly, both parties'

---

[64] Doc. 67-1, pp. 22–23; Doc. 41-1, pp. 22–23; Doc. 75-2, pp. 22–23. Doc. 67-3, p. 11; Doc. 41-3, p. 11; Doc. 75-4, p. 11.

[65] Doc. 67-1, pp. 22–23; Doc. 41-1, pp. 22–23; Doc. 75-2, pp. 22–23.

[66] Doc. 79-1, pp. 82–89; Doc. 43-1, pp. 58–65; Doc. 66-1, pp. 58–65.

motions for summary judgment on Denova's FCCPA claims should be denied with respect to the remaining 830 calls.

## IV. CONCLUSION

For her TCPA claim, Denova establishes that Ocwen called her cell phone 1,645 times using an automatic telephonic dialing system or prerecorded or artificial voice. But a genuine dispute of material fact exists about whether Ocwen called Denova's cell phone without her prior express consent.

For Denova's FDCPA and FCCPA claims, Denova establishes that Ocwen is a debt collector or person and that she was the object of collection activity arising from consumer debt. But genuine disputes of material fact exist about whether Ocwen's action violated the FDCPA and FCCPA. Further, the FDCPA's statute of limitations bars Denova from recovering damages for 1,374 calls, and the FCCPA's statute of limitations bars Denova from recovering damages for 815 calls.

The following is **RECOMMENDED**:

1. Denova's motion for summary judgment (Doc. 42) should be **DENIED** with respect to all counts.

2. Ocwen's motion for summary judgment (Doc. 43) should be **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

    a. Summary judgment should be **GRANTED** in Ocwen's favor against Denova's FCCPA claims (Counts I, II, and III) with

respect to 815 phone calls that occurred before February 1, 2015. For the remaining 830 calls at issue in Denova's FCCPA claims, summary judgment should be **DENIED**.

b. Summary judgment should be **GRANTED** in Ocwen's favor against Denova's FDCPA claims (Counts IV, V, and IV) with respect to 1,374 calls that occurred before February 1, 2016. For the remaining 271 calls at issue in Denova FDCPA claims, summary judgment should be **DENIED**.

c. Summary judgment in Ocwen's favor with respect to Denova's TCPA claim (Count VII) should be **DENIED**.

**ENTERED** in Tampa, Florida, on July 26, 2019.

Amanda Arnold Sansone

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(C). Under 28 U.S.C. Section 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unopposed factual findings and legal conclusions.

Copies to: Counsel of Record, District Judge