## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**DENISE DENOVA,**

               Plaintiff,

**vs.**                        **CASE NO. 8:17-cv-02204-SDM-AAS**

**OCWEN LOAN SERVICING, LLC,**

               Defendant.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## OBJECTIONS (DOC. 86) TO REPORT & RECOMMENDATION (DOC. 85)

**COMES NOW**, Plaintiff, Denise DeNova, ("Ms. DeNova") by and through her undersigned counsel, pursuant to Federal Rule of Civil Procedure 72 and Local Rule 6.02(a), and submits this Opposition to Defendant, Ocwen Loan  Servicing, LLCs ("Ocwen") Objections (Doc. 86) to Report and Recommendation (the "R&R") (Doc. 85). In addition the arguments and case law presented in her summary judgment briefs, Ms. DeNova requests the Court to consider the following in its de novo review of the complete record facts and legal basis of the R&R's conclusions.

### Introduction

Ocwen objects to the R&R's conclusions that it called Ms. DeNova with an "automatic telephone dialing system" ("ATDS") and that there is a question of fact as to whether Ocwen violated the FDCPA and FCCPA by communicating with Ms. DeNova despite knowledge that she was represented by an attorney, or by abusing or

harassing her. As discussed below, the R&R properly concluded that Ocwen called Ms. DeNova with an ATDS and that there is a question of fact as to whether Ocwen violated the FDCPA and FCCPA.

## Standard of Review

Pursuant to both Rule 72(b) and Local Rule 6.02, a party has 14 days to file objections to a magistrate's pre-trial order. Under Rule 72(b), "The district judge must determine de novo any part of the magistrate judges disposition that has been properly objected to."

## Argument and Authorities

I. **The Court should adopt the R&R's conclusion that the Aspect dialer is an ATDS covered by the TCPA.**

The Telephone Consumer Protection Act (TCPA) was passed by Congress to provide essential privacy protections from the intrusion of unwanted autodialed or prerecorded calls to cell phones.[1] The law prohibits autodialed calls to cell phones without the prior express consent of the person called, except in the case of an emergency or for calls to collect federal government debt. Because the TCPA is remedial in nature, it is entitled to a liberal construction to protect consumers.[2]

---

[1] *See Gager v. Dell Financial Services, LLC*, 727 F.3d 265 (3rd Cir. 2013); *see also*, S. Rep. 102–178, at 5 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1972; *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, at 954 (discussing TCPA's purpose of curbing calls that are a nuisance and an invasion of privacy); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Soundbite Communications, Inc., 27 FCC Rcd. at 15391–92 ¶ 2 (Nov. 26, 2012) (discussing TCPA's purpose of protecting consumers against unwanted contact from automated dialing systems).
[2] *See Nationstar Mortgage, LLC*, 2018 U.S. Dist. LEXIS 143175, *15 (N.D. Ala. Aug. 23, 2018) (*citing Carmichael v. Nissan Motor Acceptance Corp.*, 291 F.3d 1278, 1280 (11th Cir. 2002) (noting that remedial statutes "must be construed liberally in order to best serve Congress intent."))

In this case, there is no dispute that Ocwen called Ms. DeNova's cell phone 1493 times using its Aspect dialer.[3] There is also no dispute that the Aspect dialer is a predictive dialer with the current capacity to store telephone numbers and automatically dial them in prescribed sequence without human intervention at the time of the calls.[4] The parties dispute, however, whether the Aspect dialer is an ATDS under the TCPA.

Since 2003, the FCC--the agency Congress charged with interpreting the TCPA--has consistently interpreted the TCPA's statutory definition of an ATDS to cover "any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 15391, at ¶ 2, n. 5 (F.C.C. Nov. 29, 2012) ("2012 FCC Order"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Red. 14014, ¶¶ 131-133 (F.C.C. Jul. 3, 2003) ("2003 FCC Order"); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, at ¶ 12 (F.C.C. Jan. 4, 2008) ("FCC 2008 Order") (affirming 2003 order).

More specifically, the FCC's definition includes all predictive dialers since predictive dialers have the capacity to store and dial numbers automatically. *See Dominguez v. Yahoo!, Inc.*, 2017 WL 390267, at 4 (E.D. Pa. Jan. 27, 2017). In 2003,

---

[3] Doc. 67, p. 2; Doc. 41, p. 2; Doc. 75-1, p. 2., Doc. 79-2, p. 8; Doc. 52, p. 7.
[4] Doc. 67, pp. 7–8; Doc. 41, pp. 7–8; Doc. 75-1, pp. 7–8., Doc. 66, p. 8; Doc. Doc. 43, p. 8; Doc. 79-1, p. 9., Doc. 68, p. 6; Doc. 42, p. 6; Doc. 76-1, p. 6.

the Federal Communications Commission ("FCC") determined that such predictive

dialer systems fell within the definition of an ATDS. *Id.* (citing *In the Matter of Rules*

*and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("2003 FCC

Order"), 18 FCC Rcd. 14014, 14090–94, ¶¶ 130, 133 and *id.* at 14022 n. 31 (noting

that a predictive dialer is "an automated dialing system that uses a complex set of

algorithms to automatically dial consumers telephone numbers in a manner that

predicts the time when a consumer will answer the phone and a telemarketer will be

available to take the call"). Accordingly, under these prior FCC Orders there is no

question that the Aspect dialer, which the parties agree is a predictive dialer, is an

ATDS as matter of law.

"In 2015, the FCC went a step further. It took the position that an ATDS

need only have the potential capacity to dial random and sequential numbers rather

than the present ability to do so." *Sessions v. Barclays Bank of Delaware*, 317 F. Supp.

3d 1208, 1211 (N.D. Ga. Jun 25, 2018); 2015 FCC Order at 7961, 7974 ¶ 15. The

2015 FCC Order faced challenges in various courts of appeal, challenges that were

eventually consolidated before the D.C. Circuit Court of Appeals in *ACA Int'l v. FCC*,

885 F.3d 687, 691 (D.C. Cir. 2018). The D.C. Circuit in *ACA Int'l* set out to answer

two questions regarding the TCPA's definition of an ATDS: "(i) when does a device

have the capacity to perform the two enumerated functions; and (ii) what precisely

are those functions?" *Id.* at 695.

While it is undisputed that *ACA Int'l* set aside portions of the 2015 Order with respect to the capacity required to be an ATDS, the parties disagree about whether *ACA Int'l* set aside the prior Orders that held predictive dialers are ATDSs.

The parties briefed the impact of *ACA Int'l* on the prior Orders extensively in their cross motions for summary judgment with Ocwen arguing *ACA Int'l* set aside the prior Orders and Ms. DeNova arguing the prior Orders remain valid. After considering the case law and arguments presented extensively, the R&R joined the majority of courts within this District and Circuit and concluded that the prior Orders remained valid after *ACA Int'l* and that since there was no dispute that the Aspect dialer was a predictive dialer, Mrs. DeNova has proven Ocwen used an ATDS to place the calls. Ocwen objects to this conclusion as an error arguing that instead of a split the "clear majority view" is that the prior-Orders were set aside.

As discussed below, there is in fact a split on the impact of *ACA Int'l* and this court should adopt the conclusion of the R&R. However, even if this Court determines the prior Orders were set aside by *ACA Int'l*, as explained at length in Ms. DeNovas summary judgment briefs, the statutory definition itself dictates the same result: systems that automatically dial from a list, as the Aspect dialer indisputably does, are covered under the TCPA's definition of ATDS.

A. <u>The R&R's conclusion that the pre-2015 FCC orders are still good law</u>
<u>was not in error.</u>

In reaching the conclusion that the prior FCC Orders are still valid, the R&R

noted and discussed the split between the circuit[5] and district courts over the impact

of *ACA Int'l* on the portions of the prior FCC Orders discussing autodialer functions

and more specifically whether predictive dialers have the necessary functions. Ocwen

---

[5] In the event this Court does not accept the R&R's ultimate recommendation that the prior Orders remain valid, Ms. DeNova asks this Court to reconsider the R&R's conclusion that the Second Circuit held that *ACA Int'l* set aside the prior Orders in *King v. Time Warner Cable, Inc.*, 894 F.3d 473 (2d Cir. Jun. 29, 2018). As explained by district courts within the Second District, *King* did not set aside the prior Orders. *See e.g. Duran v. La Boom Disco, Inc.*, 2019 U.S. Dist. LEXIS 30012 (E.D.N.Y. Feb. 25, 2019) ("While the Second Circuit plainly held that the 2015 Order had been invalidated, the court nowhere explicitly addresses the validity of the prior FCC Orders. . . The Second Circuit, however, only analyzed the meaning of capacity under the statutory language itself. As discussed earlier, the court declined to weigh in on the requisite functions of an autodialer.")  Specifically, *King* stated: "In *ACA International*, the D.C. Circuit noted that the role of the phrase, "using a random or sequential number generator," has generated substantial questions over the years," which the FCCs 2015 Order failed to conclusively resolve. To the extent that applying the narrower definition of capacity that we adopt today necessitates that those complicated questions be answered in the present case, we leave it to the district court to address them in the first instance."). *King v. Time Warner Cable, Inc.*, 894 F.3d 473, 481 (2d Cir. Jun. 29, 2018).

Ocwen argues the R&R wrongly concludes that *Dominguez v. Yahoo, Inc.*, 894 F.3d 116 (3d Cir. 2018) ("*Dominguez II*") suggests that the prior Orders remain valid. In *Dominguez II*, the Third Circuit stated, "In light of the D.C. Circuits holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of the 2015 [FCC Order]." *Id.* Although the Third Circuit also seemed to assume that a device must be able to produce random or sequential numbers possibly indicating it set aside the prior Orders, many courts including those in the Third District have determined it did not intend to set aside the prior orders with respect to predictive dialers. *See e.g. Somogyi v. Freedom Mortgage Corporation*, 2018 U.S. Dist. LEXIS 129697 (D.N.J. Aug. 2, 2018) (J. Simandle) ("As the Third Circuit recently observed, however, FCC Orders issued prior to 2015 appear to have survived whatever criticism was levied by the D.C. Circuit."); *Wilson v. Quest Diagnostic*, Case No. 18-11960 (D.N.J. Dec. 10, 2018) (J. Martini) ("This Court finds the Third Circuit's interpretation of the TCPA "as we did prior to the issuance of the 2015 [Order]" to mean that the D.C. Circuit did not invalidate the 2003 and 2008 Orders, only the 2015 Order. Therefore, a predictive dialer qualifies as an ATDS so long as it has "the [present] capacity to dial numbers without human intervention."); *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476 No. 17-cv-6331 (E.D.N.Y. Feb. 25, 2019) (J. Ross) (explaining, "The Third Circuit also declined to take a stance on the continuing validity of the prior FCC Orders, holding only: "In light of the D.C. Circuits holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling.")

objects to the R&Rs conclusion as an error arguing that instead of a split the "clear majority view" is that those portions of the prior Orders were set aside.

Ocwen is wrong that there is no clear majority view.[6] Nationally, the undersigned is aware of 39 courts that have decided this issue, with 19 finding the prior Orders were not set aside[7] and 20 finding they were.[8]

---

[6] *See Espejo v. Santander Consumer U.S., Inc.*, No. 11 C 8987 (N.D. Ill. Jun. 12, 2019) (J. Kocoras) ("In *ACA International*, the D.C. Circuit invalidated portions of the FCCs 2015 Order that concerned the definition of an ATDS. However, both the parties and courts across the country are split as to whether ACA International also invalidated the FCCs 2003 and 2008 Orders."); *Gonzalez v. Hosopo Corp.*, No. 18-10072-FDS (D. Mass. Apr. 9, 2019) (J. Saylor) ("The parties disagree, however, as to whether *ACA Int'l* invalidated the definitions of an ATDS put forward in the FCCs 2003, 2008, and 2012 rulings. Courts interpreting *ACA Int'l* have split on this issue."); *Jiminez v. Credit One Bank, N.A.*, Case No. 17-cv-02844 (S.D.N.Y. Mar. 28, 2019) (J. Swain) ("Since *ACA International*, district courts have been divided on the question of whether the D.C. Circuits decision invalidating portions of the 2015 Order also invalidated related portions of prior FCC Orders discussing autodialer functions.")

[7] *Jiminez v. Credit One Bank, N.A.*, Case No. 17-cv-02844 (S.D.N.Y. Mar. 28, 2019) (J. Swain); *Ruby v. Dish Network*, 2019 U.S. Dist. LEXIS 62472 (E.D. Pa. Mar. 25, 2019) (J. Slomsky); *Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476 No. 17-cv-6331 (E.D.N.Y. Feb. 25, 2019) (J. Ross); *Wilson v. Quest Diagnostic, Inc.*, Case No. 18-11960 (D.N.J. Dec. 10, 2018) (J. Martini); *Hatuey v. IC Sys., Inc.*, 2018 U.S. Dist. LEXIS 193713, *15 (D. Mass. Nov. 14, 2018). (J. Woodlock); *Gaza v. Auto Glass Am., LLC*, No. 8:17-cv-1811-T-27AEP (M.D. Fla. Nov. 2, 2018) (J. Whittemore); *Maes v. Charter Commcn*, Case No. 18-cv-124 (W.D. Wis. Oct. 30, 2018) (J. Peterson); *Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262 (S.D. Fla. Sept. 29, 2018); *Glasser v. Hilton Grand Vacations Co., Inc.*, 314 F. Supp. 3d 1305 (M.D. Fla. Sept. 24, 2018) (J. Whittemore); *Abante Rooter & Plumbing, Inc. v. Alarm.Com*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. Aug. 3, 2018) (J. Rogers) (Judge Rogers also decided *McMillion v. Rash Curtis & Assocs.*, Case No. 2018 WL 3023449, at *3 (N.D. Cal. June 18, 2018)); *Somogyi v. Freedom Mortg. Corp.*, 2018 U.S. Dist. LEXIS 129697 (D.N.J. Aug. 2, 2018) (J. Simandle) (Judge Simandle also decided *Sieleman v. Freedom Mortgage Corporation*, 2018 U.S. Dist. LEXIS 129698 (D. N.J. Aug. 2, 2018)); *Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 3241069, at *3 (N.D. Cal. July 2, 2018) (J. Laporte); *OShea v. Am. Solar Solution, Inc.*, 2018 U.S. Dist. LEXIS 110402 (S.D. Cal. Jul. 2, 2018) (J. Lorenz); *Ammons v. Ally Fin., Inc.*, 326 F. Supp. 3d 578, 598 (M.D. Tenn. Jun. 27, 2018) (J. Crenshaw); *Castrellon v Fitness Club Mgmt., LLC*, No. CV 17- 08825, 2018 WL 5099741, at *5 (C.D. Cal. June 6, 2018) (J. Otero); *Swaney v. Regions Bank*, 2018 WL 2316452, at *1 (N.D. Ala. May 22, 2018) (J. Proctor); *Maddox v. CBE Grp., Inc.*, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) (J. Jones); *Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308, 1320-21 (S.D. Fla. May 14, 2018) (J. Goodman); *France v. Ditech Fin., LLC*, Case No. 8:17-cv-3038-T-24 MAP (M.D. Fla. Apr. 6, 2018)(J. Bucklew).

[8] *Smith v. Navient Sols., LLC*, No. 3:17-191 (W.D. Pa. Aug. 4, 2019) (J. Gibson); *Adams v. Safe Home Sec. Inc.*, No. 3:18-cv-03098-M (N.D. Tex. Jul. 30, 2019) (J. Lynn); *Snow v. Gen. Elec. Co.*, No. 5:18-CV-511-FL (E.D.N.C. Jun. 14, 2019) (J. Flanagan); *Espejo v. Santander*

As noted by Judge Sansone, most courts in this district have found the prior orders remain valid and continue to rely on them. *Compare Gaza v. Auto Glass Am., LLC*, No. 8:17-cv-1811-T-27AEP (M.D. Fla. Nov. 2, 2018) (J. Whittemore) (continuing to rely on 2003 FCC Order defining an ATDS as equipment that has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. The essential function of an ATDS is the capacity to dial numbers without human intervention."); *Glasser v. Hilton Grand Vacations Co., LLC*, 341 F. Supp. 3d 1305, 1310 (M.D. Fla. 2018) (J. Whittemore) (Sept. 24, 2018), appeal dismissed sub nom., 2018 WL 7504742 (11th Cir. Dec. 24, 2018) (finding that the pre-2015 FCC Orders were not vacated); *France v. Ditech Fin., LLC*, Case No. 8:17-cv-3038-T-24 MAP (M.D. Fla. Apr. 6, 2018)(J. Bucklew) (rejecting defendant's argument that its predictive dialer was not an ATDS because it

---

*Consumer U.S., Inc., No. 11 C 8987 (N.D. Ill. Jun. 12, 2019) (J. Kocoras); Yates v. Checkers Drive-In Rests., Inc.*, No. 17-cv-9219 (N.D. Ill. Apr. 1, 2019) (J. Coleman); *Gadelhak v. AT&T Servs., Inc.*, 2019 U.S. Dist. LEXIS 55200 (N.D. Ill. Mar. 29, 2019) (J. Chang); *Folkerts v. Seterus, Inc.*, 2019 U.S. Dist. LEXIS 42347 (N.D. Ill. Mar. 15, 2019) (J. Lee); *Thompson-Harbach v. USAA Fed. Sav. Bank*, 2019 U.S. Dist. LEXIS 3687 (N.D. Iowa Jan. 9, 2019) (J. Williams); *Richardson v. Verde Energy United States, Inc.*, 2018 U.S. Dist. LEXIS 212558 (E.D. Pa. Dec. 14, 2018) (J. Beetlestone); *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1161 (N.D. Ill. Nov. 29, 2018) (J. Shah); *Roark v. Credit One Bank, N.A.*, Civ. No. 16-173 (D. Minn. Nov. 13, 2018) (J. Magnuson); *Adams v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 184513 (S.D. Fla. Oct. 29, 2018) (J. Dimitrouleas); *Gary v. Trueblue, Inc.*, Case No. 17-cv-10544 (E.D. Mich. Oct. 11, 2018) (J. Drain) (Judge Drain also decided *Keyes v. Ocwen Loan Servicing, LLC*, 335 F. Supp. 3d 951 (E.D. Mich. Aug. 16, 2018)); *Fleming v. Associated Credit Servs., Inc.*, 342 F. Supp. 3d 562, 574 (D.N.J. 2018), 2018 U.S. Dist. LEXIS 163120 (D.N.J. Sept. 21, 2018); *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. Sept. 20, 2018); *Gonzalez v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 153480 (M.D. Fla. Sept. 5, 2018) (J. Moody);*Washington v. Six Continents Hotels, Inc.*, 2018 U.S. Dist. LEXIS 145639 (C.D. Cal Aug. 24, 2018) (J. Wright); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 935 (N.D. Ill. Jul. 26, 2018); *Sessions v. Barclays Bank Del.*, 317 F. Supp. 3d 1208 (N.D. Ga. Jun. 25, 2018) (J. May);*Herrick v. Godaddy.com LLC*, 312 F. Supp. 3d 792 (D. Ariz. 2018) (May 14, 2018) (J. Humetewa)

called from a list of numbers instead of generating numbers out of thin air and

instead continuing to rely on FCC Orders holding that predictive dialers are an

ATDS); *with Gonzalez v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 153480

(M.D. Fla. Sept. 5, 2018) (J. Moody) (concluding the prior Orders were set aside).

In a footnote, Ocwen erroneously states that Judge Honeywell held the prior

orders were set aside in *Melvin v. Ocwen Loan Servicing LLC, No: 8:18-cv-1911-T-36SPF*

*(M.D. Fla. May. 3, 2019)*. In *Melvin*, similar to here, Ocwen argued that after *ACA Int'l*

the TCPA does not apply to debt collectors because debt collectors necessarily dial

from a list of telephone numbers versus generate telephone numbers. Judge

Honeywell discussed *ACA Int'l* and it impact on the FCCs definition of an ATDS,

but did not hold one way or the other on that specific issue.  *Id.* ("Ultimately the

district courts must grapple with this question until they receive further guidance

from the FCC, the D.C. Circuit, or their respective circuit court of appeal.") Rather,

she denied Ocwens motion to dismiss on a related but separate issue:[9] "The Court is

persuaded by the reasoning in *Gonzalez* and *Adams* and concludes that the portion of

the 2003 FCC Order pronouncing that the TCPA applies to debt collectors is the

operative law until further guidance from the FCC or the Eleventh circuit or other

binding authority. Defendants Motion is denied on this basis."

---

[9] Instead of ruling as to whether the prior Orders remained intact regarding the functions of
an autodialer, Judge Honeywell determined that the portions of the prior Orders that
specifically stated the TCPA applies to debt collectors remained valid and left the issues
regarding the functions a device must have post-*ACA Int'l* for summary judgment. *Id.* ("But
Ocwen can revisit this issue on summary judgment.")

Similarly, the majority of courts from other districts within the Eleventh Circuit have continued to rely on the prior Orders post-*ACA Int'l*.[10] Accordingly, the R&Rs conclusion that the prior Orders remain valid and binding on this Court and that Ocwens Aspect predictive dialer is therefore an ATDS, is adequately supported by the existing case law and should be adopted by this Court.

However, even if this Court declines to adopt the R&Rs conclusion and finds the prior Orders were in fact set aside, as explained briefly above and extensively in Ms. DeNovas summary judgment briefs, the statutory definition itself dictates the same result: systems that automatically dial from a list, as the Aspect dialer indisputably does, are covered under the TCPA's definition of ATDS.

---

[10] *Compare Ramos v. Hopele of Ft. Lauderdale, LLC d/b/a Pandora@Galleria*, 2018 U.S. Dist. LEXIS 139947 (S.D. Fla. Aug. 16, 2018) (J. Seltzer) ("The ACA decision invalidated portions of the 2015 Order, but left intact the FCCs prior orders."); *Ramos v. Hopele of Ft. Lauderdale, LLC d/b/a Pandora@Galleria*, 2017 U.S. Dist. LEXIS 169302 (S.D. Fla. Sept. 20, 2018) (J. Moreno) (adopting the report and recommendation of J. Seltzer, stating "[I]n ACA, the D.C. Circuit invalidated portions of the FCCs 2015 order, but reaffirmed the FCCs 2003 determination that the defining characteristic of an [automatic telephone dialing system] is the capacity to dial numbers without human intervention."); *Maddox v. CBE Grp., Inc.*, 2018 U.S. Dist. LEXIS 88568, *10 (N.D. Ga. May 22, 2018) (finding it was bound by FCCs 2003 interpretation to determine whether the Defendants system qualified as an ATDS and that the focus of such interpretation was whether the system had could "dial numbers without human intervention."); *Swaney v. Regions Bank*, 2018 U.S. Dist. LEXIS 85217 (N.D. Ala. May 22, 2018) ("ACA International, the D.C. Circuit invalidated certain portions of the 2015 FCC Order, but not the portion of the Order reaffirming the FCCs 2003 determination that, "while some predictive dialers cannot be programmed to generate random or sequential phone numbers, they still satisfy the statutory definition of an ATDS."); *Reyes v. BCA Fin. Servs., Inc.*, 312 F. Supp. 3d 1308 (S.D. Fla. May 14, 2018) (J. Goodman) ("[T]he Court finds that the prior FCC Orders are still binding."); *with Gonzalez v. Ocwen Loan Servicing, LLC*, 2018 U.S. Dist. LEXIS 153480, *13, n. 7 (M.D. Fla. Sept. 5, 2018) (J. Moody) (finding that *ACA Int'l* vacated the 2003 and 2008 Orders only to the extent that the Court cannot apply the definitions of capacity or ATDS contained in those orders); *Sessions*, 317 F. Supp. 3d at 1212-13 ("[T]he Court finds that that the FCCs prior orders with regard to interpretations of capacity and descriptions of the statutorily enumerated functions a device must perform to be an ATDS were vacated in *ACA International*."); *Adams v. Ocwen Loan Servicing, LLC*, Case No. 18-cv-81028 (S.D. Fla. Oct. 29, 2018) (J. Dimitrouleas) ("The Court agrees with Defendant that, pursuant to ACA, the FCCs prior orders regarding its interpretation of automatic and predictive dialers under the TCPA are not binding.")

B. <u>To be an ATDS after ACA, a predictive dialer does not have to be able to generate numbers randomly or sequentially.</u>

The fundamental question in this case is whether the predictive dialer used by the Ocwen is an ATDS. If the Court finds that the prior Orders that explicitly held predictive dialers are ATDSs were set aside by *ACA Int'l*, it must interpret the statutory definition for itself and decide whether Ocwens predictive dialer falls within the definition. In its Objection, Ocwen falsely states there is a circuit split as to what functions a device must have in order to meet the definition. In this respect, Ocwen states that both the Second Circuit in *King* and the Third Circuit in *Dominguez II* held a device must be able to generate numbers randomly or sequentially to qualify as an ATDS. However, in the very same Objection, Ocwen acknowledges that *Dominguez II* was a potential capacity case and was completely "silent on the issue of predictive dialers and did not address *ACA Internationals* unease with the FCCs decisions on predictive dialing." Doc. 86, at p. 9.  Likewise, *King* was also a capacity case and contrary to Ocwens claim that it held the statutory definition requires a device itself be able to produce numbers, the Second Circuit explicitly declined to do so:

> In *ACA International*, the D.C. Circuit noted that "the role of the phrase, using a random or sequential number generator, has generated substantial questions over the years," which the FCCs 2015 Order failed to conclusively resolve. 885 F.3d at 701. To the extent that applying the narrower definition of "capacity" that we adopt today necessitates that those complicated questions be answered in the present case, we leave it to the district court to address them in the first instance.

*King v. Time Warner Cable Inc.*, 894 F.3d 473 (2d Cir. 2018) (Jun. 29, 2018); *see also*

*Duran v. La Boom Disco, Inc.*, 369 F. Supp. 3d 476,No. 17-cv-6331 (E.D.N.Y. Feb. 25,

2019) (J. Ross) ("Regarding the functions a device must possess in order to qualify as

an autodialer, the Second Circuit declined to weigh in and deferred to the district courts); *Gonzalez v. Hosopo Corp.*, No. 18-10072-FDS (D. Mass. Apr. 9, 2019) (J. Saylor) (explaining that *Marks* is the only case to directly tackle the statutory interpretation).

The TCPA defines an ATDS as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). As previously explained in Ms. DeNova's summary judgment briefs, this definition must be interpreted to encompass a predictive dialer such as the one Ocwen used to call her, which dials numbers automatically from a stored list of numbers. *See Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) (Sep. 20, 2018) ("[W]e conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a random or sequential number generator, but also includes devices with the capacity to dial stored numbers automatically."); *Allan v. Pa. Higher Educ. Assistance Agency*, Case No. 2:14-CV-54 (W.D. Mich. Aug. 19, 2019) (J. Quist) ("The Court agrees with the Ninth Circuits analysis, and because there is no question that the Avaya system that PHEAA uses stores telephone numbers to be called and automatically dials those numbers, the system qualifies as an ATDS."); *Espejo v. Santander Consumer U.S., Inc.*, No. 11 C 8987 (N.D. Ill. Jun. 12, 2019) (J. Kocoras) (holding that the prior Orders were set aside, but the plain language includes equipment that dials automatically from a list: "Because the Court adopts the interpretation of the ATDS definition that permits dialing pre-existing

Case 8:17-cv-02204-SDM-AAS   Document 89   Filed 08/23/19   Page 13 of 20 PageID 3319

customer lists, Santanders Aspect system is not exempt from the TCPA as a matter of law. Indeed, because Aspect automatically dials numbers from a set customer list, it falls within the definition of an ATDS."); *Gonzalez v. Hosopo Corp.*, No. 18-10072-FDS (D. Mass. Apr. 9, 2019) (J. Saylor) ("Put simply, under either interpretation—that is, whether treating ACA Int'l as having invalidated all of the FCCs rulings, or treating ACA Int'l as having left the FCCs pre- 2015 interpretations in place—this Court reaches the same conclusion: that equipment need not itself be able to generate random or sequential numbers to qualify as an ATDS under the TCPA."); *Getz v. Directv, LLC*, 359 F. Supp. 3d 1222 (S.D. Fla. Feb. 20, 2019) (J. Otazo-Reyes) ("A device may qualify as an ATDS if it stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns."); *Adams v. Ocwen Loan Servicing, LLC*,  2018 U.S. Dist. LEXIS 184513 (S.D. Fla. Oct. 26, 2018) (J. Dimitrouleas) ("The Court agrees with Defendant that, pursuant to *ACA*, the FCCs prior orders regarding its interpretation of automatic and predictive dialers under the TCPA are not binding.  . . Nonetheless, upon careful consideration, the Court disagrees with Defendant about what devices do constitute an ATDS under the statutory definition, and finds Defendants proposed interpretation overly restrictive . . . Upon the Courts independent review of the relevant case law, the Court agrees with the reasoning and conclusions of post-*ACA* decisions which hold that "the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator.")

As the courts cited above have determined, there are clearly two types of systems contemplated in the statutory definition – those that store and dial numbers automatically, and those that produce and dial numbers automatically. Numbers can certainly be "produced" using a random or sequential number generator. But numbers cannot be stored using a generator. Storage is an entirely separate function from generation of numbers. In fact, it is not possible for a system to store numbers using a number generator. Those two functions are mutually exclusive. If the system already has the numbers in it (stored), then there would be no need for it to produce or generate the numbers. While some decisions have expressed the view that a system can be an ATDS only if it uses a random and sequential number generator, not one of these decisions provides a satisfactory explanation of how one can use such a generator to store numbers. *See, e.g., Thompson-Harbach v. USAA Fed. Savings Bank*, 2019 WL 148711 (N.D. Iowa Jan. 9, 2019) (concluding that "using a random or sequential number generator" modifies both "produce" and "store," without suggesting an explanation for how something can be stored using a random or sequential number generator).

It is a traditional canon of statutory interpretation that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001), which in turn quotes *Washington Market Co. v. Hoffman*, 101 U.S. 112, 115-116, 25 L. Ed. 782 (1879)). Moreover, the

last antecedent rule says that a limiting clause or phrase "should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003). Applying this rule to section 227(a)(1)(A), the phrase "using a random or sequential number generator" only modifies the word "produce" rather than the word "store." Thus, the statute should be interpreted to encompass a device that stores numbers and then dials them, without any requirement that the device must use a random or sequential number generator.

The ATDS definition includes the disjunctive "or," meaning that an ATDS must include a system that stores telephone numbers, without having produced them. *See Bourff v. Rubin Lublin, L.L.C.*, 674 F. 3d 1238, 1241 (11th Cir. 2016) (explaining "or" in a similarly worded consumer protection statute). Since numbers cannot be stored using a random or sequential number generator, the term "store" is essentially read out of the statute if the phrase "using a random or sequential number generator" modifies both "store" and "produce."

Additionally, interpreting the TCPA's definition of an ATDS to exclude systems that store numbers and then dial them automatically cannot be correct, as this would cause other portions of the statute to be nonsensical or superfluous. For example, the law does not prohibit all calls made with an ATDS; it allows calls made with an ATDS when the called party has consented to receive them. 47 U.S.C. § 227(b)(1)(A)(iii). If the definition includes only systems that dial telephone numbers produced randomly or sequentially from thin air, rather than dial from a stored

database of inputted numbers, the prohibition against autodialed calls to consumers who had not consented to receive them would be meaningless. Only if the prohibition encompasses calls made from a stored list of numbers, for which the caller will know whether it has obtained consent, does the prohibition make sense. As the Ninth Circuit stated, "[t]o take advantage of this permitted use, an autodialer would have to dial from a list of phone numbers of persons who had consented to such calls, rather than merely dialing a block of random or sequential numbers." *Marks*, 904 F.3d at 1051.

Second, the TCPA prohibits use of an autodialer to call emergency telephone lines, patient rooms in hospitals, and other sensitive numbers. 47 U.S.C. § 227(b)(1)(A)(i), (ii). As the Ninth Circuit held, "[i]n order to comply with such restrictions, an ATDS could either dial a list of permitted numbers (as allowed for autodialed calls made with the prior express consent of the called party) or block prohibited numbers when calling a sequence of random or sequential numbers. In either case, these provisions indicate Congresss understanding that an ATDS was not limited to dialing wholly random or sequential blocks of numbers, but could be configured to dial a curated list." *Marks*, 904 F.3d at 1051 n.7.

Third, the 2015 Budget Act created an exemption for the use of an ATDS to make calls "solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Congress would have had no reason to enact this exception if it had not understood the statute to apply to equipment that dials from a list of numbers, such as a list of numbers of individuals who owe debts to the United

States. The federal government is certainly not making debt collection calls to random numbers, but is calling from a list of debtors.

Indeed, as noted by the Ninth Circuit, Congresss 2015 amendment to the TCPA, without amending the ATDS definition, suggests ratification of the FCCs longstanding interpretation of the term to include devices that dial numbers from a stored list. *Marks*, 904 F.3d at 1052; *see also Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164, 185 (1994) ("When Congress reenacts statutory language that has been given a consistent judicial construction, we often adhere to that construction in interpreting the reenacted statutory language.") At that point, the statutes application to list-based dialing systems had been well established for over twelve years and was binding under the Hobbs Act. *See In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, ¶ 12 (July 3, 2003)) (2003 Order); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 110, 114 (11th Cir. 2014).

Thus, Congress knew that the statute applied to list-based dialing systems used by the governments debt collectors and enacted the amendment specifically "to authorize the use of automated telephone equipment to call cellular telephones for the purpose of collecting debts owed to the U.S. government." Bipartisan Budget Act of 2015, 114 Bill Tracking H.R. 1314.

Finally, the TCPA permits an award of treble damages if a violation is willful or knowing. 47 U.S.C. § 227(b)(3). If numbers were generated out of thin air, rather than from a list, a caller could never know it was calling an emergency line or a cell phone, so this provision would also be rendered meaningless.

## II.   The Court should adopt the R&Rs conclusion that a genuine dispute of material fact exist as to whether Ocwen harassed or abused Mrs. DeNova.

Ocwen states the R&R erroneously concludes that questions of fact remain as to whether Ocwen's conduct was harassing under the FDCPA and FCCPA. In support of her claim that Ocwen abused or harassed her, Ms. DeNova presented evidence that Ocwen "stalked" her with more than 1,500 calls,[11] calling her three to six times per day for nearly three years when Ocwen knew she was represented by an attorney and defending the foreclosure action. PSMF (Doc. 41, Doc. 75-1) at ¶ 3, 9, 11, 12. Ocwen also continued the calls despite being repeatedly told by Ms. DeNova that she had an attorney and to stop calling. PSMF (Doc. 41, Doc. 75-1) at ¶ 12.

As explained in Ms. DeNova's Response to Ocwen's Motion for Summary Judgment, Ocwen incorrectly characterizes this case as simply involving a large number of calls. The cases Ocwen relies on are distinguishable as they involve far less calls and did not involve the other indicia of harassment present in this case.[12] In

---

[11] While calls outside of the relevant statutes of limitations cannot themselves be the basis for recovery, calls outside of the statute limitations are relevant to determine whether conduct within the limitations period is actionable. *See Kasalo v. Monco Law Offices, S.C.*, 2009 U.S. Dist. LEXIS 113848, * 13 (N.D. Il. Dec. 7, 2009) (*citing Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir, 1999) (continuing violation exception to statute of limitations under Title VII permits acts outside period that continue inside period to be considered to show violation)). Here, Ocwen placed 271 of calls within the FDCPA limitations period (PSMF, Doc. 41, Doc. 75-1, Exhibit D, Bates 96-102) and 830 calls within the FCCPA limitations period (Bates. 84-102). The calls within the statute of limitations were a continuation of the calls outside of the statute of limitations; therefore, the calls outside the limitation are relevant to determine whether the calls within the limitations period are actionable.

[12] In this respect, *Grimsley* involved a total of four (4) telephone calls each placed on separate days over a period of two weeks. *Grimsley v. Palm Beach Credit Adjuster, Inc.*, 691 F. Appx 576, 577, 580 (11th Cir. 2017). The Court stated, "Absent any other indicia of harassment, evidence that Focus called Grimsley four times in two weeks creates no genuine issue of material fact as to whether Focus harassed Grimsley." *Id.* at 580. *Grimsely* is therefore explicitly limited to cases involving only four calls in two weeks and no other indicia of harassment. In *Harrington v. RoundPoint Mortgage Servicing Corp.*, the defendant placed 262 calls to the plaintiff over a year, the plaintiff did not dispute the legitimacy of the debt, allege

particular, Ocwen attempts to brush over Ms. DeNova's specific testimony that she told Ocwen 8-10 times to quit calling – describing three of those conversations in detail. PSMF (Doc. 41, Doc. 75-1) at ¶ 12. Controlling Eleventh Circuit case law requires that this type of factual dispute by decided by a jury. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. Mar. 28, 2014) (reversing summary judgment where the plaintiff said he twice told the defendant to "stop calling," and the defendant said he did no such thing). Furthermore, even if Ms. DeNova had never told Ocwen to quit calling, the undisputed evidence shows Ocwen *knew* she did not want calls. In this respect, Ocwen admits it had the November 2, 2009 letter that Ms. DeNova sent to the prior servicer shortly after the foreclosure action was filed, which disputed the debt and demanded "that you, or anyone affiliated with your company, stop contacting me regarding this or any other matter…" PSMF (Doc. 41, Doc. 75-1) at ¶ 16 Ocwen also admits it should not have called Ms. DeNova based upon the letter, but it skip traced her and called her anyway. PSMF (Doc. 41, Doc. 75-1) at ¶ 7.

Accordingly, Ms. DeNova has presented evidence that creates a genuine dispute of material fact as to whether Ocwen harassed or abused her and this Court should adopt the conclusion of the R&R.

---

or testify that he told the defendant to quit calling, or allege that the defendant continued to call after learning he was represented. 290 F. Supp. 3d 1306 (M.D. Fla. Nov. 30, 2017). In *Tucker v. THE CBE Group, Inc.,* the defendant placed a total of 57 calls and the plaintiff did not present any evidence that he ever spoke to the collector. 710 F. Supp. 2d 1301 (M.D. Fla. May 5, 2010). In *Lardner v. Diversified Consultants*, *Inc.*, involved 132 calls over an eight month period and the plaintiff did not set forth any evidence that she had requested the communications to stop. 17 F. Supp. 3d 1215, 1226 (S.D. Fla. 2014).

## Conclusion

In conclusion, Ms. DeNova respectfully requests the Court adopt the R&Rs

conclusions that (1) the Aspect dialer is an "automatic telephone dialing system"

under the TCPA; and (2) there a genuine issue of fact as to whether Ocwen engaged

in harassing conduct under the FDCPA and FCCPA.

Respectfully, submitted this 23rd day of August 2019, by:

> */s/ Kimberly H. Wochholz*
> [   ] James S. Giardina – Trial Counsel
> Fla. Bar No. 0942421
> [X]  Kimberly H. Wochholz
> Fla. Bar No. 0092159
> The Consumer Rights Law Group, PLLC
> 3104 W. Waters Avenue, Suite 200
> Tampa, Florida 33614-2877
> Tel: (813) 435-5055 ext 101
> Fax: (866) 535-7199
> James@ConsumerRightsLawGroup.com
> Kim@ConsumerRightsLawGroup.com
> **Counsel for Plaintiff**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 23, 2019, I electronically filed the

foregoing document with the Clerk of the Court by using the CM/ECF system.

> */s/ Kimberly H. Wochholz*
> Kimberly H. Wochholz